A94A1207. WRIGHT v. OVERNITE TRANSPORTATION COMPANY.
(449 SE2d 167)

Pope, Chief Judge.

The claimant in this workers' compensation action was injured in early 1991. In an earlier proceeding, the board ruled that because claimant's employer failed to explain the panel of physicians to him and subsequently controverted his claim, claimant was entitled to choose his own treating physician. This ruling was affirmed by the superior court and we denied employer's application for discretionary review in August 1992. Thus, the issue of employer's liability for the disputed claim was resolved and employer was paying for claimant's medical care in February 1993, when claimant changed treating physicians. Because claimant failed to seek board authorization for this change pursuant to OCGA § 34-9-200 (b), employer refused to pay for the new physician's treatment. Claimant took his claim to the board and convinced it that such authorization was not necessary. The superior court reversed, however, holding that board authorization was necessary for a change of physicians under these circumstances. We granted this discretionary appeal to determine whether the superior court's holding was correct, and we now affirm.

1. Claimant argues that because he had the right to choose his original treating physician, he has absolute control over his medical treatment and can change his treating physician whenever he wants until he has completely recovered from his injury.[1] The latter does

---

[1] In essence, claimant suggests that in every case either the claimant or the employer has "medical control" for the duration of the case, and that the procedures for changing phy

not necessarily follow from the former, however. See *Chesapeake Masonry Corp. v. Wiggington,* 327 SE2d 121 (Va. 1985) (even though claimant had right to choose treating physician because employer denied his claim and failed to provide panel, once claimant chose doctor that doctor became his authorized treating physician, and claimant could not refuse his care and change to another doctor without approval); cf. also *Worley Bros. Granite Co. v. Hall,* 109 Ga. App. 720 (137 SE2d 312) (1964) (even though employer allowed claimant to choose his original treating physician, claimant did not have right to change to another physician without approval).

As a general rule, a claimant cannot change to a new treating physician without petitioning the board for approval under OCGA § 34-9-200 (b). See *Holcombe v. Brown Transp. Corp.,* 253 Ga. 719 (324 SE2d 446) (1985); OCGA § 34-9-201 (e) (previously OCGA § 34-9-201 (d)). Nonetheless, if the employer is failing to provide medical care, the claimant need not seek approval before going to a new doctor, and the employer cannot later complain that the treatment was unauthorized. See *Boaz v. K-Mart Corp.,* 254 Ga. 707 (1) (334 SE2d 167) (1985); *Ga. Power Co. v. Brasill,* 171 Ga. App. 569 (320 SE2d 573) (1984), aff'd, 253 Ga. 766 (327 SE2d 226) (1985); *Capital Atlanta v. Carroll,* 213 Ga. App. 214 (2a) (444 SE2d 592) (1994). This is because the statutory requirement of petitioning for approval of a change "presupposes present treatment is being allowed and is appropriate only if existing medical assistance still continues." *Brasill,* 171 Ga. App. at 570.

The timing of the employer's failure to provide care is crucial, however; where the claimant changes doctors at a time the employer is providing medical care, the employer's subsequent termination of medical care and controversion of the claim does not excuse the claimant's failure to petition for a change "at the time other medical services were sought." *K-Mart Corp. v. Anderson,* 166 Ga. App. 421, 423 (304 SE2d 526) (1983). Cf. *State of Ga. v. Tungler,* 181 Ga. App. 21 (1) (351 SE2d 248) (1986); *Scandrett v. Talmadge Farms,* 174 Ga. App. 547 (2) (330 SE2d 772) (1985) (both holding that claimant cannot ignore panel and choose own doctor before employer has opportunity to furnish treatment and refuses to do so).

---

cians or treatment set forth in OCGA § 34-9-200 (b) are solely for the use and benefit of the party without control. However, regardless of the limited choices and decisions the statute allows the parties to make under various circumstances, the reality is that the board retains "medical control" in every case: "The legislative intent to have the board resolve such disputes by its hearing and ordering powers can be seen from the fact that virtually every aspect of compensation under OCGA §§ 34-9-200 and 34-9-201 is to be effected pursuant to the board's judgment and order. Specifically, OCGA § 34-9-200 (a) makes the decision concerning what treatment and in what dollar amount the employee is entitled a decision for the board." *Holcombe v. Brown Transp. Corp.,* 253 Ga. 719, 721 (324 SE2d 446) (1985).

Thus, the pivotal question is whether the employer was providin[g] medical care at the time the claimant changed doctors: if so, th[e] claimant was required to petition the board for approval before h[e] could change physicians or treatment. Cf. *Boaz*, 254 Ga. at 709-71[0] (emphasizing that the claimant could choose a new doctor because h[e] was not currently receiving treatment from authorized treating phys[i]cian); *Capital Atlanta*, 213 Ga. App. at 216 (3a) (holding petition f[or] approval of referral was not necessary because employer had contr[o]verted claim "at the time of the referral").

In this case, employer was providing medical care for claimant a[t] the time claimant changed physicians. Just as a subsequent refusal t[o] provide medical care does not excuse a claimant from petitioning f[or] a change if the employer was providing care at the time of the chang[e,] neither does a prior refusal to provide benefits excuse the claima[nt] from filing such a petition once the dispute is resolved in the claim[]ant's favor and the employer is providing medical care. Accordingl[y] the superior court was correct in its ruling that the new physician[] treatment was unauthorized.

2. Claimant also contends he had the right to change physicia[n] once without board authorization under Board Rule 201 (e). Th[is] rule, which became effective in July 1992, provides that "[w]hen [a] case has not been controverted . . . and when the employer did n[ot] have a posted panel or had an invalid panel, the employee is autho[r]ized to select a physician who is not listed on the employer's pan[el.] That physician so selected becomes the authorized treating physicia[n] and the employee may make one change from that physician to a[n]other physician without approval of the employer and without an o[r]der from the board." It is arguable that this rule is invalid because [it] enlarges the substantive rights of claimants, see *Holt Svc. Co. v. Mo[d]lin*, 163 Ga. App. 283 (1) (293 SE2d 741) (1982); and it is furth[er] arguable that the rule would not apply here anyway, since claimant['s] right to choose his original treating physician was based not on e[m]ployer's failure to post a valid panel but on its failure to adequate[ly] explain the panel, as well as its subsequent controversion of t[he] claim.[2] Even assuming that the rule is valid and otherwise applicab[le,] however, we conclude that the rule would not apply here becau[se] claimant's injury occurred before the rule became effective, and t[he] rule cannot be retroactively applied. See *Hall v. Hartford Ins. Grou[p,]* 146 Ga. App. 751 (247 SE2d 570) (1978).

---

[2] We note that the newly amended version of OCGA § 34-9-201 (effective July 19[9]) requires employers to post a valid panel of physicians in subsection (b) and imposes the du[ty] to adequately explain the panel to workers in subsection (c). Subsection (f) then provi[des] that the worker may select his own treating physician if the employer fails to comply w[ith] subsection (b), but it does not mention the employer's failure to comply with subsection [(c)]

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED OCTOBER 11, 1994.

*James K. Lange, Ralph E. Lamar IV,* for appellant.
*Hunter, Lewis & Brannon, Charles W. Brannon, Jr.,* for appellee.