A06A0996. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY v. REID.
(640 SE2d 300)

MIKELL, Judge.

We granted Metropolitan Atlanta Rapid Transit Authority's ("MARTA") application for discretionary appeal to determine whether the superior court erred in affirming an award of the appellate division of the State Board of Workers' Compensation ("the Board"), which affirmed the award of the administrative law judge ("ALJ") granting employee Michael Reid's request for a change in authorized treating physician ("ATP"). We affirm the judgment of the superior court, but reiterate that the Board is not empowered to create unpublished rules that conflict with the Workers' Compensation Act ("WCA"), OCGA § 34-9-1 et seq.

The record shows that Reid suffered a compensable injury on October 25, 1999. On October 1, 2004, he filed a claim for request of change of ATP. The claim filed with the Board consisted of a 270-page pleading which included a Form WC-200b, two typewritten pages of argument and 267 pages of medical exhibits. Reid served MARTA with a different set of pleadings consisting of only three pages, the Form WC-200b and the two typewritten pages of argument.

MARTA filed an objection on October 13, 2004, and included a copy of its Workers' Compensation Managed Care Organization's Internal Dispute Resolution ("IDR") process, which shows the steps for requesting a change in provider. The ALJ ruled that the IDR was, on its face, inapplicable to a request for change of ATP, noting that "[i]f there were some reason that the document would be relevant to the issue presented, [MARTA] has provided no guidance as to why that would be so." The ALJ granted the change in physician. But, the ALJ also made reference to a large volume of medical records dating back to 1995. Realizing that it had not been served with all of the evidence presented to the ALJ, MARTA filed a motion for reconsideration, asserting claims of lack of due process and misleading service and complaining that the ALJ misinterpreted the IDR. MARTA also filed an application for review by the appellate division, asserting the same claims. Following oral argument, the appellate division affirmed the award of the ALJ authorizing a change of physician, and deleted all evidence relating to a 1995 injury, but did not enter any

ruling on the claims of due process and misleading service.[1] MARTA then appealed to the superior court.

When the Board transmitted the appellate record to the superior court, it was discovered that MARTA's motion for reconsideration, together with all affidavits and exhibits attached in support thereof, had been lost or discarded by the appellate division's staff. MARTA's rebuttal brief also was lost or discarded. The Board was unable to recall whether the lost documents had been considered by the appellate division but it did verify the ALJ's recollection that he had never seen the motion for reconsideration. As a result, MARTA faxed duplicates of its rebuttal brief and motion for reconsideration, with supporting documents, to the appellate division, which reconstructed the official record and transmitted the reconstructed record and an amended index to the superior court.

The Board took the position that under its unpublished internal appellate procedure, the motion for reconsideration was irrelevant to the record and would not have been considered even if the motion had not been lost or discarded because MARTA had filed an application for review which immediately terminates the ALJ's 20-day limited continuing jurisdiction under OCGA § 34-9-103 (b). According to counsel, the Board instructed MARTA that the proper appellate procedure under OCGA § 34-9-103 is to file a motion for reconsideration during the running of the 20 days and if nothing is heard back, then file an application for review by the twentieth-day statutory deadline.

Faced with this situation, the superior court elected to open the appellate record and receive de novo evidence of the claim of constructive fraud caused by the Board's loss of pleadings and evidence and its unpublished rule of procedure, and evidence of the claim of constructive fraud caused by the employee's misleading service.[2] Following a hearing, the superior court affirmed the Board's decision, finding that: (1) the lost pleadings and evidence did not constitute deprivation of due process through constructive fraud because MARTA could have raised the issue of misleading service during oral arguments before the Board; (2) the Board's unpublished appellate rule should be published but reversible error did not occur because the rule did not vary from civil procedure; and (3) the Board's construction of the IDR procedure is supported by the "any evidence" rule. MARTA appeals these findings.

---

[1] MARTA first raised these claims in its motion for reconsideration, but the ALJ never ruled on them.

[2] See *Dennington v. Rockdale Package Stores*, 161 Ga. App. 450, 451 (1) (288 SE2d 709) (1982) (in cases of alleged fraud the superior court has the power to consider newly discovered evidence of such fraud which may be presented for the first time on appeal).

1. MARTA contends that the superior court erred in not vacating the award because Reid's misleading service and the Board's loss of its pleadings show a constructive fraud and amount to the deprivation of due process. We disagree.

"Constructive fraud consists of any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another."[3] Of course MARTA should have been served with all of the evidence presented to the ALJ, and the Board should have properly handled MARTA's filings. However, MARTA cannot show that it suffered any harm or injury. In its motion for reconsideration, MARTA claimed that it was never served with the medical records and that it therefore "had no opportunity to argue merits when it was misled into believing that a [dismissible] WC-200 (b) was all that was filed." The motion, however, is silent as to why or how those "merits" mandate that the ALJ reconsider his award. Rather, the motion discusses the IDR attached to MARTA's original objection and explains why IDR procedures require that the ALJ void his award and deny jurisdiction, something MARTA failed to do in its original objection.[4] Despite ample opportunity, MARTA has made no showing as to how the unserved medical evidence would result in a different outcome in this case.

With regard to the lost documents, MARTA's counsel's affidavit is insufficient to prove that the Board did not consider the documents; it only provides evidence that the Board did not include them when preparing the appellate record. This omission alone does not establish that the Board never had the documents, or that they were even lost. That the appellate division did not discuss the documents in its decision is not legally sufficient to conclude that they were not considered.[5] "[T]he mere failure to refer to all the evidence in the findings of fact does not establish that the [B]oard did not consider the evidence in its review of the matter."[6] Moreover, as the appeal was argued orally before the appellate division, MARTA had an opportunity to be heard and to present its evidence. Accordingly, MARTA has not been deprived of due process by constructive fraud.

---

[3] OCGA § 23-2-51 (b).

[4] As alluded to previously, the ALJ indicated that MARTA opposed Reid's request based on its IDR process, submitting with its objection a copy of that procedure without further explanation. The ALJ ruled that the IDR was, on its face, inapplicable to a request for change of ATP, noting that "[i]f there were some reason that the document would be relevant to the issue presented, [MARTA] has provided no guidance as to why that would be so."

[5] *Mintz v. Norton Co.*, 209 Ga. App. 109, 110 (1) (432 SE2d 583) (1993). See also *Eunice v. Citicorp Homeowners*, 167 Ga. App. 335 (2) (306 SE2d 395) (1983) (presumption that the trial court has reviewed the entire record even if not so stated in its order).

[6] (Citations omitted.) *Mintz*, supra.

2. MARTA contends that the superior court should have applied the "matter of law" standard to its review of the IDR because it is analogous to a contract. According to MARTA, this Court should find that the IDR applies to Reid's request for a change of ATP and that Reid failed to exhaust all remedies allowed under OCGA § 34-9-208 (d) (3) and Board Rule 208, i.e., Reid failed to exhaust the grievance procedure of the managed-care plan. We disagree.

In Board filings, MARTA indicated that it "was under" a Workers' Compensation/Managed Care Organization ("WC/MCO"), and that Board Rule 208 (f) governed Reid's request. Board Rule 208 (f) provides that "[d]isputes which arise on an issue related to managed care shall first be processed without charge through the dispute resolution process of the WC/MCO." In its order affirming the ALJ, the appellate division found that OCGA § 34-9-200 (b) governed Reid's request and that "[c]ontrary to [MARTA's] argument, OCGA § 34-9-208 and Board Rule 208 do not divest the Board of this jurisdiction."

OCGA § 34-9-200 (b) provides that

> [u]pon the request of an employee or an employer, or upon its own motion, the board may in its judgment, after notice is given in writing of the request to all interested parties and allowing any interested party 15 days from the date of said notice to file in writing its objections to the request, order a change of physician or treatment and designate other treatment or another physician.

Board Rule 208 (a) (1) (K) (i) further provides that

> [e]mployees must be allowed to change authorized treating physicians within the managed care plan at least once without proceeding through the managed care plan's dispute resolution process. In such cases, employees shall give notice to the manage [sic] care plan for a change in their authorized treating physician.[7]

Because we find that Reid was allowed a one-time change of physician without proceeding through the dispute resolution process, we need not interpret the terms of the IDR. Although the superior

---

[7] In its order, the appellate division noted – and MARTA has not disputed – that this was Reid's first request for a change in ATP.

court did not rely on Board Rule 208 (a) (1) (K) (i) in affirming the Board's decision, a judgment right for any reason will be affirmed.[8]

Even if Board Rule 208 (a) (1) (K) (i) did not apply, the Board was authorized to grant Reid's request under OCGA § 34-9-200 (b). In its order affirming the ALJ, the appellate division interpreted the requirements of OCGA § 34-9-200 (b) and found that the Board had jurisdiction to order a change of physician under the statute.[9] Though this interpretation may conflict with the Board's own internal published rules, i.e., Board Rule 208 (f), the interpretation of a statute by an administrative agency charged with enforcing its provisions is given great deference, unless contrary to law.[10] We defer to the Board's interpretation that OCGA § 34-9-200 (b) does not require Reid to exhaust the dispute resolution process of the WC/MCO before petitioning the Board for a change in physician. Accordingly, the superior court did not err in affirming the Board's decision on this basis.

Lastly, though our ruling does not depend on interpreting the IDR, we find it necessary to address MARTA's claim that the ALJ misinterpreted the IDR. The IDR pertinently provides that

[a] grievance means a written complaint, other than a petition for benefits, filed by the injured worker pursuant to the requirements of the managed care arrangement expressing dissatisfaction with the insurer's workers' compensation managed care arrangement's refusal to provide medical care or the medical care provided. Grievances do not address: Indemnity benefits[;] Vocational benefits[;] MMI or PI issues[;] Mileage reimbursement[;] Provider Payments[;] Attorney costs and fees[;] Compensability[;] Causation[.]

Under the heading "Request for Service," the IDR further provides that "[i]nitial requests for medical services, second opinions or change in providers are not considered a complaint or grievance" and explains that a nurse case manager will evaluate all requests and notify the injured worker of a decision within five days. If the request is denied or ignored, the injured worker is entitled to file a complaint or grievance. The next section, titled, "Complaint," provides as follows:

---

[8] See *Dart Container Corp. v. Jones*, 209 Ga. App. 331, 332 (433 SE2d 417) (1993).

[9] See *Barnes v. City of Atlanta Police Dept.*, 219 Ga. App. 139, 140 (464 SE2d 609) (1995) (exclusive method for obtaining a change of physician is by Board approval pursuant to OCGA § 34-9-200 (b)); *Capital Atlanta v. Carroll*, 213 Ga. App. 214, 216 (3) (444 SE2d 592) (1994) (same).

[10] See *City of Atlanta v. Sumlin*, 258 Ga. App. 643, 645-646 (574 SE2d 827) (2002).

Complaint is any dissatisfaction expressed by an injured worker concerning the workers' compensation managed care arrangement. The following is not covered under the complaint or grievance process: Initial written requests for medical services[;] Request for a second opinion[;] *Request for a Change in Provider*[.]

(Emphasis supplied.)

In light of the poor wording and seemingly contradictory language of the IDR, we are not surprised that the ALJ concluded that the document did not apply to Reid's request for a change of ATP. An injured employee reading the "Complaint" section of the IDR could be led to believe that the grievance procedure does not apply to a change of ATP. In its lengthy explanation, however, MARTA appears to contend that although an *initial request* for a change of provider is not covered under the complaint or grievance process, the subsequent *denial* or *disregard* of a request is covered under the process. Assuming this is an accurate interpretation, we presume that the Board would not endorse such a poorly worded provision under its WC/MCO rules and regulations.

3. In its final enumeration, MARTA argues that the Board's internal unpublished procedure is contrary to OCGA § 34-9-103 (b) and ignores long-standing case law. When we granted MARTA's application for discretionary appeal, we were concerned with a question of first impression in Georgia: Whether the Board has the authority to create and enforce unpublished rules that appear to conflict with other statutory provisions of the WCA. Though we believe that the Board does not have such authority, our opinion does not change the result in this case and we affirm the trial court.

According to MARTA's counsel, the Board took the position that under its unpublished internal appellate procedure, the motion for reconsideration was irrelevant to the record and would not have been considered even if the motion had not been lost or discarded because MARTA had filed an application for review which immediately terminates the ALJ's 20-day limited continuing jurisdiction under OCGA § 34-9-103 (b).

OCGA § 34-9-103 (b) pertinently provides:

Within the time limit provided by subsection (a) of this Code section for review by the [B]oard of an award made in accordance with Code Section 34-9-102 or within the time limit provided by Code Section 34-9-105 . . . , upon or without the suggestion of a party to the proceedings *and notwithstanding the filing of an application for review or appeal*, the [B]oard or any of its members or administrative law judges

issuing an award *shall have authority* to reconsider, amend, or revise the award to correct apparent errors and omissions.

(Emphasis supplied.) The plain language of this statute states that even though an application for review has been filed, both the Board and the ALJ have authority to act on a motion for reconsideration of an award within the 20-day period allowed by the statute. When a statute is plain and susceptible to only one reasonable construction, an appellate court has no authority to place a different construction on it but must construe it according to its terms.[11] Thus, an unpublished Board rule providing that the mere filing of an application for review or appeal divests the ALJ of authority to reconsider the award contravenes OCGA § 34-9-103 (b) and is unenforceable.

Under OCGA § 34-9-59, the Board is "empowered and authorized to adopt proper rules of procedure to govern the exercise of its functions and hearings before the [B]oard or any of its members or administrative law judges." However, this power is not without limitation. OCGA § 34-9-60 (a) states that "[t]he [B]oard may make rules, not inconsistent with this chapter, for carrying out this chapter." The statutory converse of this rule is that the Board shall not make rules that are inconsistent with Chapter 9 of Title 34. In *Holt Svc. Co. v. Modlin*,[12] a panel of this Court addressed the rule-making powers of the Board, stating:

The State Board of Workers' Compensation is an administrative commission, with such jurisdiction, powers, and authority as may be conferred upon it by the General Assembly. The Board is a creature of the statute, and has no inherent powers and no lawful right to act except as directed by the statute. It may exercise its rule-making powers under and within the law, but not outside of the law or in a manner inconsistent with the law. Although [OCGA § 34-9-60] grants to the Board the power to make rules, not inconsistent with this Title, for carrying out the provisions of this Title, Board rules so promulgated may not enlarge, reduce, or otherwise affect the substantive rights of the parties.[13]

---

[11] See generally *Garrard v. Hicks*, 266 Ga. 181, 182 (465 SE2d 665) (1996). Examination of OCGA §§ 34-9-47 and 34-9-103 (a), the statutory provisions creating the "appellate division," do not reveal any obvious intent by the legislature to revoke, sub silentio, any of the provisions in OCGA § 34-9-103 (b) or § 34-9-60 (a).

[12] 163 Ga. App. 283 (293 SE2d 741) (1982).

[13] (Citations and punctuation omitted.) Id. at 284-285 (1). Accord *Shaw Indus. v. Shaw*, 262 Ga. App. 586, 589, n. 2 (586 SE2d 80) (2003).

Accordingly, the Board exceeded its rule-making authority, as a matter of law, in creating an unpublished rule of appellate procedure that is inconsistent with OCGA § 34-9-103 (b). Further, the act creating an appellate division did not expressly vest that adjudicatory entity with the authority to make rules inconsistent with other statutory provisions of the WCA. Thus, contrary to the superior court's finding, MARTA was deprived of its statutory opportunity, under OCGA § 34-9-103 (b), to move the ALJ to reconsider his ruling after an application for review had been filed, and to have the ALJ rule upon that request. However, in light of our rulings in Divisions 1 and 2, any deprivation of that right was harmless.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED OCTOBER 10, 2006 —
RECONSIDERATION DENIED DECEMBER 14, 2006.

*Robert J. Routman*, for appellant.
*Moskowitz & Carraway, David H. Moskowitz*, for appellee.

