**FOURTH DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and COOMER, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 18, 2020**

# In the Court of Appeals of Georgia

A19A1878. THE HARTFORD CASUALTY INSURANCE COMPANY et al. v. HAWKINS.

A19A1879. STATE FARM FIRE AND CASUALTY COMPANY et al. v. HAWKINS.

COOMER, Judge.

In these discretionary appeals, Aced It Golf, LLC d/b/a 92 Threads (the "Employer") and its two insurance carriers, State Farm Fire & Casualty Company and The Hartford Casualty Insurance Company (collectively, "Appellants") appeal the order of the superior court reversing the decision of the appellate division of the State Board of Workers' Compensation (the "Board"), which denied, among other things, claimant Lisa Hawkins' request for a change of physician. Appellants contend that the superior court erred (1) by failing to apply the "any evidence" standard of review to the Board's findings of fact that Hawkins' injuries had resolved as of August 1,

2017; (2) by granting Hawkins' change of physician request despite the Board's factual determination that no additional medical treatment was required for any work-related condition; and (3) by ordering the payment of attorney fees to Hawkins. For the following reasons, we reverse the superior court's order in its entirety.

"In reviewing a workers' compensation award, both the appellate court and the superior court must construe the evidence in the light most favorable to the party prevailing before the [Board]." *Ray Bell Constr. Co. v. King*, 281 Ga. 853, 854 (642 SE2d 841) (2007) (citations and punctuation omitted). Viewed in this light, the record shows that on October 8, 2015,[1] Hawkins tripped backwards over an open drawer and fell onto the floor during the course of her employment with the Employer, a small family-owned business that does T-shirt printing and embroidery work. She did not immediately seek medical treatment. After Hawkins notified the Employer about her injuries, the Employer authorized treatment with a physician chosen by Hawkins, Eli A. Finkelstein, M.D. at Resurgens Orthopaedics. The Employer did not have a properly completed panel of physicians at the time of the accident, but one of the owners talked with State Farm after the accident and compiled a panel of physicians, which included Dr. Finkelstein. Hawkins first saw Dr. Finkelstein on November 6,

---

[1] At this point, State Farm served as the Employer's workers' compensation carrier.

2

2015, where she presented with complaints of neck, arm, shoulder, and lower back pain. Based on the results of an MRI, Dr. Finkelstein opined that there were "no findings in the cervical spine other than straightening of the lordosis," and that Hawkins' shoulder "may show some mild evidence of subacromial bursitis and AC impingement, but otherwise no findings." Dr. Finkelstein referred Hawkins for a course of therapy, prescribed Flexeril, placed Hawkins on light-duty work restrictions with no use of the left upper extremity, and further referred Hawkins to Angelo DiFelice, M.D. to follow up on her shoulder pain. Hawkins first saw Dr. DiFelice in December 2015. Although showing some improvement, Hawkins reported pain, numbness, and tingling down her left arm and hand. Upon review of Hawkins' MRI scan, Dr. DiFelice found no "obvious" rotator cuff tear, but placed her on restrictions "per Dr. Finkelstein."

In March 2016, Hawkins was evaluated for pain management by Eduardo Escorcia, M.D. Her treatment plan with Dr. Escorcia included bilateral cervical injections and various pain medications. Hawkins continued to work through 2016, but she felt that her workload "overwhelmed [her] shoulder" during the busy Christmas season. At this point, Hawkins informed the Employer that she could no longer do a full-time embroidery job and needed a light-duty accommodation. In

February 2017, Hawkins underwent a second MRI. On February 16, 2017, Dr. Escorcia recommended light-duty restrictions including "[n]o pushing/pulling, no lifting, minimal upper body use for 4 to 6 weeks." Hawkins was terminated on March 6, 2017. The Employer admitted that "one of the reasons" for Hawkins' termination was that she was unable to perform her regular duty job and she "couldn't do as much of the work as we would have liked."

On May 8, 2017, Hawkins underwent a functional capacity evaluation ("FCE"), in which the majority of activities tested showed that Hawkins had "demonstrated abilities" in the light-duty category. The evaluator, however, opined that Hawkins "gave a self-limited effort," and that the results of the FCE did not reflect her true capabilities. Moreover, the evaluator stated that "unless an objective medical reason exists that would preclude return-to-work," Hawkins "should be returned to work." On May 17, 2017, Hawkins returned to Dr. DiFelice, and he noted that the FCE had some "inconsistencies" and that Hawkins was still symptomatic and suffering from some shoulder dysfunction. As a result, he again placed her on restrictions for her left shoulder with no overhead use of the left upper extremity, and lifting of up to two pounds below shoulder level.

4

On May 25, 2017, at State Farm's request, Hawkins underwent an independent medical evaluation with Paul Mefferd, D.O. at Spine Rehabilitation Specialists of Georgia. Based on a review of medical records and tests, as well as his own independent medical examination, Dr. Mefferd opined that Hawkins was capable of a "return to regular duty and full-time work" and that no further medical treatment was necessary in connection with the October 8, 2015 work-related injury. On June 28, 2017, Dr. Finkelstein saw Hawkins and noted that although there was left shoulder dysfunction with "subjective neuropathic symptoms of the left upper extremity," he had no further treatment to offer and advised Hawkins to continue pain therapy. He also stated that any finding of disability would be at Dr. DiFelice's discretion. On August 1, 2017, based upon his review of Hawkins' medical records, her deposition testimony and surveillance materials taken at the request of the insurance companies, Dr. DiFelice opined that Hawkins' "complaints of pain and disability of her left arm are inconsistent with Ms. Hawkins' physical activities as depicted in the video surveillance" footage taken in June 2017 "showing her using her upper left extremity," that Hawkins had reached maximum medical improvement with regard to the October 8, 2015 work injury to her neck and left arm, that she would need no further work restrictions as a result of the injury, and that no

additional medical treatment to her left upper extremity was required. State Farm controverted Hawkins' claim on August 25, 2017, on the ground that no further medical care was required.

On August 8, 2017, Hawkins requested a change of physician to Xavier A. Duralde, M.D.[2] On October 11, 2017, Hawkins underwent an independent medical examination with Robert Karsch, M.D. Dr. Karsh opined that no further treatment was needed for Hawkins' cervical spine. It was his impression that Hawkins' "left sided neck and trapezius pain is from her posturing for her left shoulder pain" and would improve with further treatment. He noted that Hawkins could try a topical NSAID and PRP injection, and recommended surgical intervention if the PRP injection did not provide relief. Dr. Karsch stated that, absent further treatment, Hawkins was "[c]apable of sedentary or desk work only."

Hawkins filed a claim for workers' compensation benefits, penalties, and assessed attorney's fees against the Employer and State Farm based on an October 8, 2015 injury date. She also sought benefits against the Employer and Hartford due to the fact that she suffered a fictional new accident on March 7, 2017, when she was

_____

[2] There is no indication that Hawkins ever sought treatment with Dr. Duralde.

terminated from her job.[3] At the hearing on her claims, Hawkins requested a change of physician to Dr. Karsch based on his recommended treatment plan.

Based on the foregoing, the Administrative Law Judge ("ALJ") found that Hawkins sustained an initial October 8, 2015 work-related injury, and that because Hawkins continued to work above the prescribed light-duty work restrictions, she suffered a new accident, in the form of aggravation of her pre-existing condition, on March 7, 2017, entitling her to benefits as of that date. . The ALJ, however, found that Hawkins' work-related injuries resolved as of August 1, 2017, when her treating physicians found her capable of returning to regular-duty, unrestricted work and opined that no further medical treatment was required for her work-related conditions. The ALJ did not find Hawkins' testimony about her continued pain to be credible based in part on her own observations during the duration of the five-hour hearing, in which Hawkins "did not fidget, grimace or exhibit any other behaviors which would suggest that she was in pain." Accordingly, the ALJ concluded that Hawkins

---

[3] A fictional new accident occurs when a claimant is injured on the job and continues to perform her job duties until such time that she is forced to cease work because of the gradual worsening of her condition which is at least partially attributable to her physical activity in continuing to work subsequent to her injury. *ABF Freight System, Inc. v. Presley*, 330 Ga. App. 885, 886 (769 SE2d 611) (2015). Hartford was the insurer for the March 7, 2017 date of injury.

was entitled to total temporary disability benefits effective March 7, 2017 to August 1, 2017, payable by Hartford. The ALJ denied Hawkins' requests for attorney's fees and late payment penalties, and further denied her request for a change in her authorized treating physician and for additional medical treatment with regard to either the October 8, 2015 or March 7, 2017 dates of injury.

Hawkins appealed to the Board, arguing in pertinent part that the ALJ (1) erred in finding that both her October 8, 2015 and March 7, 2017 work injuries resolved as of August 1, 2017; and (2) erred in denying her request for a change of physician under Board Rule 201 (c). The Board adopted the ALJ's order in its entirety. Hawkins then appealed to the superior court.

Following a hearing, the superior court reversed the decisions of the Board and ALJ. Specifically, the superior court found that the Employer and State Farm failed to maintain a valid panel of physicians in violation of OCGA § 34-9-201 and Board Rule 201 at the time of Hawkins' initial October 8, 2015 injury. Because Hawkins exercised her right to a change of physician prior to State Farm controverting her claim, the superior court concluded that Hawkins was statutorily entitled to a change

8

in physician, and the Board's denial of her request "constitute[d] legal error."[4] Moreover, the superior court found that because Hawkins' request for a change of physician should have been granted, "the [Board] also erred in finding [Hawkins'] work injuries resolved as of August 1, 2017" because Dr. Karsch assigned continued work restrictions and recommended additional treatment for Hawkins' work injuries. Finally, the superior court reversed the Board's finding that an assessment of attorney's fees was not warranted based on its finding that State Farm "illegally denied [Hawkins] her statutory right to a change of physician by controverting all medical treatment after [Hawkins] timely asserted this right." State Farm and Hartford then filed applications for discretionary appeal, which we granted. These appeals followed. We address both appeals together.

"If any evidence supports the [Board's] findings, those findings are binding and conclusive, and neither this [C]ourt nor the superior court may substitute itself as the fact finding body." *Medical Office Mgmt. v. Hardee*, 303 Ga. App. 60, 67 (2) (b) (693 SE2d 103) (2010) (citation and punctuation omitted). "However, erroneous applications of law to undisputed facts, as well as decisions based on erroneous

---

[4] Although the superior court found that Hawkins was statutorily entitled to a change of physician and continuing medical treatment, the court's order failed to specify the date of accident and thus, it is unclear which insurer would be liable.

theories of law, are subject to the de novo standard of review." *McLendon v. Advertising That Works*, 292 Ga. App. 677, 677-678 (665 SE2d 370) (2008).

1. Appellants contend that the superior court erred by failing to apply the "any evidence" standard of review to the Board's finding of fact that Hawkins' injuries had resolved as of August 1, 2017. We agree.

The record shows that Dr. Finkelstein saw Hawkins on June 28, 2017, and concluded that although Hawkins exhibited left shoulder dysfunction and "subjective neuropathic symptoms of the left upper extremity," he had no further treatment to offer and advised Hawkins to continue pain therapy. He also stated that any finding of disability would be at Dr. DiFelice's discretion. On August 1, 2017, Dr. DiFelice opined that Hawkins had reached maximum medical improvement with regard to the October 8, 2015 work injury to her neck and left arm, and that she would need no further work restrictions as a result of the injury, and that no additional medical treatment to her left upper extremity was required. Thus, the Board's finding Hawkins' work-related injuries had resolved as of August 1, 2017, is supported by evidence in the record.

The superior court reversed the Board's finding that Hawkins' work-related injuries had resolved as of August 1, 2017, based on its conclusion that the Board had erred in denying Hawkins' request for a change in physician. The superior court reasoned that if the Board had properly granted Hawkins' request for a change of physician to Dr. Karsch, it would not have found that Hawkins' work injuries resolved as of August 1, 2017. However, a reviewing superior court "is not authorized to disregard competent evidence that it believes is not credible, reweigh the evidence, or resolve conflicting evidence, as these powers are reserved solely for the ALJ and the Board." *Autozone, Inc. v. Mesa*, 342 Ga. App. 748, 753 (804 SE2d 734) (2017) (footnote omitted). Accordingly, because there was evidence in the record to support the Board's finding that Hawkins' work-related injuries had resolved as of August 1, 2017, the superior court erred in reversing the Board's finding.

2. Appellants further contend that the superior court erred when it reversed the Board's denial of Hawkins' change of physician request despite the Board's factual determination that no additional medical treatment was required for any work-related condition. We agree.

> OCGA § 34-9-200 (a) requires an employer to furnish the injured employee with medical treatment which "shall be reasonably required

11

and appear likely to effect a cure, give relief, or restore the employee to suitable employment," and OCGA § 34-9-201 (b) (1) allows the employer to satisfy that requirement by posting a panel of six physicians from which an employee may accept services. An employee may make one change from a panel physician to another panel physician, and a panel physician may refer the employee to a nonpanel physician, although that nonpanel physician may not make further nonpanel referrals. OCGA § 34-9-201 (b) (1). An employee may also ask the Board to order a change of physician or treatment, and if granted the employer is liable for those expenses. OCGA §§ 34-9-200 (b); 34-9-201 (e).

"If the employer fails to provide any of the procedures for selection of physicians as set forth in subsection (c) of [OCGA § 34-9-201], an employee may select any physician to render service at the expense of the employer." OCGA § 34-9-201 (f). Further, if an employer terminates the employee's medical benefits, the employee is entitled to see any doctor she chooses and make the employer pay for it if she can prove she was still injured at that time as a result of the accident. If an employer-approved physician releases an employee back into the work force as cured, the employer has not adequately met its duty of providing treatment to the employee if the employee is able to prove that [her] subsequent medical problems were related to [her] work-related injury.

*Lane v. Williams Plant Svcs.*, 330 Ga. App. 416, 421 (2) (766 SE2d 482) (2014) (citations and punctuation omitted).

12

The Board found that Hawkins' work-related injuries had resolved as of August 1, 2017, which predated her request for a change in her treating physician. Consequently, the Board denied Hawkins' requests for a change in her authorized treating physician and for additional medical treatment for either of her work-related injuries. Relying on Board Rule 201 (c), the superior court reversed the Board's denial, concluding that because the Employer did not have a valid panel of physicians at the time of Hawkins' initial October 8, 2015 injury, Hawkins automatically possessed the right to a unilateral change of physician. Board Rule 201 (c) provides that:

> [w]hen a case has not been controverted but the employer fails to provide any of the procedures for selection of physicians as set forth in OCGA § 34-9-201 (c), the employee is authorized to select a physician who is not listed on the employer's posted panel of physicians . . . . After notice has been given to the employer, that physician so selected becomes the authorized treating physician, and the employee may make one change from that physician to another physician without approval of the employer and without an order of the Board.

In *MARTA v. Reid*, 282 Ga. App. 877, 883 (3) (640 SE2d 300) (2006), we held that:

13

[t]he State Board of Workers' Compensation is an administrative commission, with such jurisdiction, powers, and authority as may be conferred upon it by the General Assembly. The Board is a creature of the statute, and has no inherent powers and no lawful right to act except as directed by the statute. It may exercise its rule-making powers under and within the law, but not outside of the law or in a manner inconsistent with the law. Although OCGA § 34-9-60 grants to the Board the power to make rules, not inconsistent with this Title, for carrying out the provisions of this Title, Board rules so promulgated may not enlarge, reduce, or otherwise affect the substantive rights of the parties.

(Citation and punctuation omitted.) "It is arguable that [Board Rule 201 (c)] is invalid because it enlarges the substantive rights of claimants[.]" *Wright v. Overnite Transp. Co.*, 214 Ga. App. 822, 824 (2) (449 SE2d 167) (1994).

However, pretermitting whether Board Rule 201 (c) is invalid, the superior court erred in concluding that Hawkins was entitled to a change in physician. Hawkins has the burden of proving that the medical services she is seeking are directly related to a work-related injury. See *Smith v. Mr. Sweeper Stores, Inc.*, 247 Ga. App. 726, 728 (1) (544 SE2d 758) (2001) ("When medical services are sought, then the claimant must prove that those services are directly related to a work-related injury."). As discussed in Division 1, the Board found, based on evidence in the

14

record, that her work-related injuries had resolved as of August 1, 2017. Thus, the Board acted within its discretion in denying Hawkins' request for additional medical treatment. See *Williams v. West Central Ga. Bank*, 225 Ga. App. 237, 238 (483 SE2d 607) (1997) ("The [B]oard has broad discretion under the standards set forth in OCGA § 34-9-200 (a) to determine what medical treatment the employer and insurer will be required to furnish to an injured employee." (citations omitted)). Consequently, the question of which provider should be authorized for such treatment is moot, and the superior court erred in concluding that Hawkins was entitled to a change in her authorized treating physician.

3. Appellants next contend that the superior court erred in reversing the Board's denial of an award of attorney fees to Hawkins. We agree.

The Board found that an assessment of attorney fees was not warranted because neither insurer had acted based on unreasonable grounds. Whether proceedings have been defended without reasonable grounds "presents an issue of fact for determination by the Board, and where there is any evidence to support the Board's award the court must affirm." *Motor Convoy, Inc. v. Maddox*, 172 Ga. App. 430, 431 (323 SE2d 235) (1984) (citations omitted). The superior court reversed the Board's finding based on its conclusion that State Farm "illegally denied [Hawkins] her

15

statutory right to a change of physician by controverting all medical treatment after [Hawkins] timely asserted this right." As discussed in Division 2, the superior court erred in concluding that Hawkins was automatically entitled to a change of physician. The record supports the Board's determination that neither insurer acted based on unreasonable grounds. Consequently, we reverse the superior court's award of attorney fees to Hawkins.

*Judgment reversed. McFadden, C.J., and Doyle, P. J., concur*.