### A08A0086. KEYSTONE AUTOMOTIVE et al. v. HALL.
(665 SE2d 392)

BARNES, Chief Judge.

We granted this discretionary appeal to Keystone Automotive, the employer of the late Gordon Luther Hall, Sr., and its insurer, Hartford Insurance Company of the Midwest/SRS (collectively "Keystone Automotive") to challenge the judgment of the superior court reversing the award of the Appellate Division of the State Board of Workers' Compensation and granting death benefits to Hall's widow, Holly Hall. Finding no error, we affirm.

The following facts were stipulated by the parties: Mr. Hall was a route salesman for Keystone Automotive. On the date of his injury he reported to work as usual, and after speaking with his general manager, he walked through the warehouse area to the front counter where, after speaking with two employees, he walked to the back of the warehouse. He was not seen again until he was discovered by

---

[15] (Citations and punctuation omitted.) *Johnson v. State*, 289 Ga. App. 435, 437 (2) (657 SE2d 333) (2008).

other employees on the ground outside of the warehouse bay door beside his truck. Although the employees performed CPR and called for an ambulance, Hall never regained consciousness and died after three weeks of hospitalization.

Mr. Hall's widow filed a claim for workers' compensation benefits which the employer contested. The claim was referred to a Workers' Compensation Administrative Law Judge ("ALJ") for resolution. The parties stipulated that Hall performed none of the work-related tasks that might be described as strenuous before he was discovered lying beside his truck. The ALJ concluded that because the employee was in a place where he would reasonably be expected to be while on the job and his death was unexplained, Hall's widow was entitled to the presumption that the death arose out of Hall's employment. See *Zamora v. Coffee Gen. Hosp.*, 162 Ga. App. 82, 84-85 (290 SE2d 192) (1982).

Apparently relying on the failure of doctors to reach a consensus on the exact cause of Hall's death, the ALJ further reasoned that the employer failed to overcome the *Zamora* presumption by affirmatively demonstrating that the death did not arise out of his employment. The ALJ noted that the claim would not be compensable absent the unexplained death presumption.

Keystone Automotive appealed, and the State Workers' Compensation Board appellate division reversed in a 2-1 decision. The majority concluded that the presumption of compensability discussed in *Zamora* did not arise here as all of the medical evidence indicated that Hall died of a naturally occurring event unrelated to his work duties. The majority further opined that even if the presumption applies here, the medical evidence was sufficient to overcome the presumption of compensability.

The dissenting judge, however, agreed with the ALJ that *Zamora* controls and compels a contrary outcome. The dissent further found that the physicians' opinions were speculative, and that this was not a "heart attack case" because Mr. Hall's medical records from the three weeks he survived in the hospital "were consistent with a normal heart."

The Appellate Division's award states that Mr. Hall's treating physician found that the cause of his "cardiopulmonary arrest was *most likely* due to underlying cardiac dysrhythmia and that during the course of resuscitation, he did suffer anoxic encephalopathy, which eventually led to his death." (Emphasis supplied.) Another physician who performed an independent review of Mr. Hall's medical record opined that "the *most likely explanations*" for Mr. Hall's cardiac arrest were that he "*could have*" suffered primary

ventricular hypertrophy or he *could have* had a markedly slow or absent pulse from a cardiac conduction system failure." (Emphasis supplied.)

The Appellate Division apparently placed great weight upon the opinion of the physician who conducted the independent medical review of Mr. Hall's records, who further said that

> [w]hile it is not crystal clear exactly what [caused Mr. Hall to collapse], none of the plausible causes of his collapse have any relationship whatsoever to Mr. Hall's employment. *This unexpected and tragic event was clearly the result of a naturally occurring event unrelated to his usual work of employment.*

(Emphasis in original.)

Mrs. Hall appealed to the superior court, which reversed. She successfully argued that the Appellate Division erred by confusing the "immediate" cause of death with the "precipitating" cause of death, which may be described as the event or chain of events leading to Hall's death. The superior court found that because no evidence suggested what exactly caused Hall's cardio-pulmonary arrest, there is no evidence to suggest a non-work-related, precipitating cause of death. Based on this reasoning the superior court reversed the award of the Appellate Division.

1. Keystone Automotive contends the superior court erred by reversing the Appellate Division, in what Keystone Automotive's counsel contends was "a shockingly sloppy decision," because the court misapplied the "any evidence" standard. Keystone Automotive alleges that because the award of the board was supported by some evidence, the board's findings were conclusive and binding on the court.

On appeal from an award of the Appellate Division

> of the State Board of Workers' Compensation, this Court examines the record to see if there is competent evidence to support the award and construes the evidence in a light most favorable to the prevailing party. The question of whether the trial court applied the correct legal standard in evaluating the evidence, however, is one of law, which we review de novo.

(Citation and punctuation omitted.) *Bayer Corp. v. Lassiter*, 282 Ga. App. 346, 347 (638 SE2d 812) (2006). Further,

> [i]t is axiomatic that the findings of the State Board of Workers' Compensation, when supported by any evidence,

are conclusive and binding, and that neither the superior court nor this court has any authority to substitute itself as a fact finding body in lieu of the board.

(Citation and punctuation omitted.) *South Ga. Timber Co. v. Petty*, 218 Ga. App. 497, 498 (462 SE2d 176) (1995).

The Workers' Compensation Act was enacted to "alleviate the suffering of injured workers and their families by providing immediate and certain financial assistance, regardless of whether the injury resulted from the fault of the employer, as long as the injury arose out of and in the course of employment." *Travelers Ins. Co. v. Southern Elec.*, 209 Ga. App. 718, 719 (1) (434 SE2d 507) (1993). In furtherance of these aims an injury

means only injury by accident arising out of and in the course of the employment and shall not, except as provided in this chapter, include a disease in any form except where it results naturally and unavoidably from the accident. . . . "Injury" and "personal injury" shall not include injury caused by the willful act of a third person directed against an employee for reasons personal to such employee, nor shall "injury" and "personal injury" include heart disease, heart attack, the failure or occlusion of any of the coronary blood vessels, stroke, or thrombosis unless it is shown by a preponderance of competent and credible evidence, which shall include medical evidence, that any of such conditions were attributable to the performance of the usual work of employment. . . .

OCGA § 34-9-1 (4).

Keystone Automotive further contends the superior court erred in applying the presumption arising from an unexplained death because the medical evidence explained the precipitating cause of Mr. Hall's death, and erred by ignoring the definition of "injury" in OCGA § 34-9-1 (4), which excludes heart attacks from "injury" unless a preponderance of competent and credible evidence, including medical evidence, shows that the heart attack was attributable to the employee's performance of his usual work.

Mrs. Hall contends the precipitating cause of her husband's death was unknown and, therefore, the presumption that his death arose from his employment was properly applied by the superior court. She contends the precipitating cause of her husband's death was not explained, and the medical opinions merely go to the immediate cause of his death. Thus, the lack of any evidence showing why his heart went into dysrhythmia means the presumption should

apply. She further contends that Keystone Automotive's theories to the contrary are based upon mere speculation. We agree.

The medical evidence in this case is far from conclusive. Mr. Hall's death certificate says that the immediate cause of death was "cardio pulmonary arrest due to, or as a consequence of cardiac dysrhythmia." In his report, the independent medical reviewer states that

> [d]uring the course of [Hall's] hospitalization a CT scan of the brain was done which showed evidence of anoxic encephalopathy but no hemorrhage or ischemic stroke was seen. A cardiac catheterization done on the day of admission showed calcification in the left main coronary artery *but no significant obstruction was seen throughout the coronary arteries. Left ventricular function was normal.* The admission ECG showed sinus rhythm with a right bundle branch block and left anterior fascicular block with a normal PR interval. *Throughout his hospitalization Mr. Hall remained electrically and hemodynamically stable. . . .*

> There are *two most likely causes* for Mr. Hall's cardiac arrest: *he could either have* suffered primary ventricular tachycardia or fibrillation on the basis of just having left ventricular hypertrophy *or he could have* had a markedly slow or absent pulse from a cardiac conduction system failure. His underlying "bifascicular block" manifested by his right bundle branch block and leftward axis on the ECG does speak to some conduction problems. *Mr. Hall did not manifest either ventricular arrhythmias or conduction system disturbances during his hospitalization.*

> *Obviously, something caused Mr. Hall to collapse on August 6th. While it is not crystal clear exactly what that event was, none of the plausible causes of his collapse have any relationship whatsoever to Mr. Hall's employment.* This unexpected and tragic event was clearly the result of a naturally occurring event unrelated to his usual work of employment.

(Emphasis supplied.)

The physician conducting the independent review of Mr. Hall's medical records also completed a questionnaire prepared for this case. The questionnaire stated that the doctor could state to a reasonable degree of medical certainty that the cause of Mr. Hall's death was "primary cardiac arrest from either A-V block or primary ventricular arrhythmia" that did not result as "the direct and

proximate result[1] of his on-the-job activities," and the medical evidence does not "support the condition [sic] that the deceased employee's condition leading to his death was attributable to his performance of his usual work or employment," and the medical evidence "supports the contention that the deceased employee's death was the result of naturally occurring events unrelated to his job."

The Discharge Summary prepared after Mr. Hall's death stated that the principal diagnosis was cardiopulmonary arrest, status post resuscitation; severe anoxic encephalopathy seizures, new onset secondary to severe anoxic encephalopathy; hypertension; urinary tract infection; and history of tobacco use. The summary also states that Mr. Hall's condition *"most likely . . . was caused* by cardiac dysrhythmia," (emphasis supplied) and the concluding sentence stated "[i]t was found that his cause of the cardiopulmonary arrest was *most likely due* to underlying cardiac dysrhythmia and that during the course of resuscitation, he did suffer severe anoxic encephalopathy, which eventually led to his death." (Emphasis supplied.)

A consultation report prepared before Mr. Hall's death stated:

> The patient had a sudden event this morning and went into cardiac arrest. I *suspect* this was primary cardiac arrhythmia, however [a] primary CNS event such as a massive subarachnoid hemorrhage is also *a possibility* given his history of smoking and hypertension. At the present time he has [a] diffusely abnormal exam consistent with diffuse hypoxic ischemic cortical injury from hypoperfusion during his arrest. His myoclonus is also a bad prognostic sign.

(Emphasis supplied.) A pulmonary medicine consultation also stated that Mr. Hall passed out at work and was in ventricular fibrillation when the emergency medical technicians arrived, that Mr. Hall had a recent heart catheterization that showed no significant coronary disease, and that a heart catheterization after Mr. Hall's collapse showed "the coronaries were clear." Another consultation report assessed Mr. Hall as having

> cardiac arrest, *questionable etiology* with normal catheterization, suspect underlying seizure activity; anoxic encephalopathy; urinary tract infection; seizure activity secondary

---

[1] This language appears to be an attempt to impose standards of tort law on a workers' compensation claim, which is contrary to the deliberate design of the Workers' Compensation Act. *Bayer Corp. v. Lassiter*, supra, 282 Ga. App. at 349.

to anoxic encephalopathy; history of hypertension; history of tobacco abuse; and history of cerebrovascular accident, hypertensive.

(Emphasis supplied.) Moreover, a cardiac ultrasound shortly before Mr. Hall's death was normal, as was a cardiac catheterization the year before.

The result in this appeal is determined by proper application of the presumption that an employee's death arose out of his employment. *Zamora* clarified this presumption as follows:

> The burden of proof in a workers' compensation case is upon the claimant to show that the employee suffered an accidental injury which arose out of and in the course of his employment. The claimant is aided in his burden by the well-established presumption that when an employee is found dead in a place where he might reasonably have been expected to be in the performance of his duties, it is presumed that the death arose out of his employment.

(Citations and punctuation omitted.) *Zamora*, supra, 162 Ga. App. at 83-84. *Zamora* clarifies that the thing presumed under the above rule is that the causally connected events preceding the decedent's death were work-related and not merely personal to the employee. Furthermore, *Zamora* stated that

> [t]he same rule attaches where the immediate cause of death arises from internal and physical rather than external and non-physical factors. Where the precipitating causative factor of a stroke is known and explained as hypertension, the claimant is not entitled to rely upon the presumption that the stroke "arose out of" the deceased's employment but must submit probative evidence on the issue of the causal connection between the stroke and the employment. Accordingly, the rule is that where the evidence demonstrates that the precipitating causative factor of a death is known and explained, neither the claimant, the administrative law judge nor the Full Board is authorized to rely upon the presumption that the death "arose out of the employment." To authorize an award where the precipitating causative factor of the death is known and explained, the fact finder's finding that the death "arose out of the employment" must be supported by evidence that there was "some causal connection between the conditions under which the employee worked" and the death.

(Citations and punctuation omitted.) *Zamora*, supra, 162 Ga. App. at 85-86.

The superior court found that the Appellate Division effectively confused the "immediate" cause of death with the "precipitating" cause of death. Keystone Automotive argues that, to the contrary, where there is no evidence to indicate that some significant external event or circumstance may have triggered the decedent's death, it is logical to conclude that the "immediate" cause of death and the "precipitating" cause of death are one and the same. This argument, however, is inconsistent with the manner in which the presumption has been applied in this State. "This presumption arises when the employee's death is 'unexplained.' This does not mean, however, that the immediate cause of death must be unexplained; it means that the precipitating cause, rather than the immediate cause, of death must be unexplained." *Buschel v. Kysor/Warren*, 213 Ga. App. 91, 94 (4) (444 SE2d 105) (1994).

Even though the Appellate Division relied heavily upon the opinion of the physician who performed the review of Mr. Hall's medical records, the doctor never once states what the precipitating cause of Mr. Hall's death was. Instead, the physician identifies several *"likely"* causes that *"could"* have been the cause of Mr. Hall's cardiac arrest, and then he goes on to say that *"[o]bviously, something caused Mr. Hall to collapse on August 6th. While it is not crystal clear exactly what that event was, none of the plausible causes of his collapse have any relationship whatsoever to Mr. Hall's employment."*

Given the various medical opinions stated in this case offering different possibilities as the cause of Mr. Hall's collapse and the lack of certainty reflected in them, we cannot state as a matter of law that Keystone Automotive successfully explained the precipitating cause of Mr. Hall's medical condition that led to his death. Further, it is not apparent to us what qualified the physician who conducted the review of Mr. Hall's medical records to mark "No" in response to the questions whether the condition resulting in his death was "the direct and proximate result of his on-the-job activities" and whether the medical evidence "support[s] the condition [sic] that the deceased employee's condition leading to his death was attributable to his performance of his usual work or employment," or to mark "Yes" in response to a question whether "the medical evidence supports the contention that the deceased employee's death was the result of naturally occurring events unrelated to his job." Obviously, the physician was qualified to give his opinion on the medical cause of Mr. Hall's death, but the record does not demonstrate how, in the absence of a definite medical cause of death, he could determine whether Mr. Hall's death was related to his employment. In this

regard, this testimony is much like the expert in *Johnson v. Knebel*, 267 Ga. 853, 857-858 (3) (485 SE2d 451) (1997) (While expert witnesses may give their opinions as to facts, principles and rules involved in the science in which they are learned, they are not, as to questions lying outside the domain of their expertise, exempt from the restriction of the rule which requires witnesses to state facts and not opinions.). Accordingly, the questionnaire responses add nothing to Keystone Automotive's case.

Keystone Automotive's argument, however, also misconstrues the effect and purpose of the presumption. The presumption applies, not because some evidence pointed to a work-related death, but because no evidence existed to prove that Mr. Hall's death did not arise out of his employment. Further, our law has long recognized that although an injury or personal injury must be caused by an accident, the term accident is not limited to injuries caused by external forces, but also include internal injuries caused by performing the employee's duties. *Lumbermen's Mut. Cas. Co. v. Griggs*, 190 Ga. 277, 288 (9 SE2d 84) (1940). Therefore, in the absence of evidence explaining the precipitating cause of Mr. Hall's death, the evidence of his pre-existing hypertension and tobacco use does not prohibit application of the presumption. Id.

Here, Mrs. Hall argues that because no proof exists of what precipitated her husband's medical condition, the presumption should apply. In *Buschel v. Kysor/Warren*, supra, 213 Ga. App. at 94 (4), this court explained that the "presumption arises when the employee's death is 'unexplained.' This does not mean, however, that the immediate cause of death must be unexplained; it means that the precipitating cause, rather than the immediate cause, of death must be unexplained." Such are the facts of this case. No evidence, medical or otherwise, points to the precipitating cause of Hall's death; no medical expert can say why Mr. Hall collapsed, or state with any degree of certainty that his collapse was caused by a particular medical condition. Instead, the physicians were left to state various possible conditions that might or could have caused Mr. Hall's collapse and subsequent cardiac arrest. Such evidence is not, as a matter of law, sufficient to explain the precipitating cause of Mr. Hall's death within the meaning of the unexplained death presumption.

Further,

a mere inference is not sufficient to overcome the presumption but competent evidence must be adduced at the hearing to overcome it which is contrary or irreconcilable with it. Evidence must be introduced to show that the death did not arise out of the employment to overcome the presumption.

(Citation and punctuation omitted.) *Publishers Circulation Fulfillment v. Bailey*, 215 Ga. App. 136, 138 (449 SE2d 645) (1994). Also, as in *Zamora*, the evidence "merely suggests several noncompensable possibilities, no one of which is shown as *the* explanation for [Hall's death]." *Zamora*, supra, 162 Ga. App. at 87. The presumption that a death was employment-related cannot be overcome by presenting evidence "that the death 'might not have' been employment related but the evidence must show that the death 'did not' arise out of the employment." *Southern Bell Tel. &c. Co. v. Hodges*, 164 Ga. App. 757, 761 (3) (298 SE2d 570) (1982). Given the state of the evidence in this case, the Appellate Division erred by finding that even if the presumption applied, Keystone Automotive successfully rebutted it.

Therefore, in the absence of evidence establishing the precipitating cause of Mr. Hall's death, the trial court did not err by reversing the Appellate Division.

2. Keystone Automotive further contends the superior court also erred by ignoring OCGA § 34-9-1 (4) which requires medical evidence in heart cases. By its terms, this Code section requires what Keystone Automotive terms "heart cases"[2] to be proven by a preponderance of the evidence that the "conditions were attributable to the performance of the usual work of employment" before they can be considered an injury. See OCGA § 34-9-1 (4). Two problems exist with this argument: First, no medical evidence establishes that Mr. Hall's death resulted from any of the conditions set forth in the Code section. Even though Mr. Hall was found in cardiac arrest by the emergency medical responders, the heart catetherizations and ultrasounds conducted in the hospital and discussed above show that he did not die as a result of any of the heart conditions set forth in the section. Second, contrary to Keystone Automotive's argument, the unexplained death presumption satisfies the proof requirement of OCGA § 34-9-1 (4). The Code section requires that "a preponderance of competent and credible evidence" show that the specified conditions "were attributable to the performance of the usual work of employment." In other words, the Code section requires proof that the conditions arose out of the decedent's employment. Under the unexplained death presumption, the decedent's death is presumed to arise out of the decedent's employment. Consequently, once the unexplained death presumption arises, no further proof is required to satisfy OCGA § 34-9-1 (4).

---

[2] OCGA § 34-9-1 (4) says "heart disease, heart attack, the failure or occlusion of any of the coronary blood vessels, stroke, or thrombosis" are not injuries within the Act "unless it is shown by a preponderance of competent and credible evidence, which shall include medical evidence, that any of such conditions were attributable to the performance of the usual work of employment."

3. Keystone Automotive also alleges that the superior court applied a superceded policy regarding liberal interpretation of the Workers' Compensation Act. In its order, the superior court stated, "[a]s always, the Workers' Compensation Act must be given a liberal interpretation in favor of the employee." Keystone Automotive contends this statement was superceded by OCGA § 34-9-23, which states that the

> chapter shall be liberally construed only for the purpose of bringing employers and employees within the provisions of the chapter and to provide protection for both. . . . The provisions of this chapter shall be construed and applied impartially to both employers and employees.

Although we agree that courts reviewing workers' compensation cases should no longer interpret the law liberally in favor of the employee, we do not find that this error significantly affected the result in this case.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED JULY 10, 2008 — ■■■■■■■■

*Drew, Eckl & Farnham, David A. Smith*, for appellants.
*Westmoreland, Patterson, Moseley & Hinson, Thomas W. Herman*, for appellee.