**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**September 6, 2012**

# In the Court of Appeals of Georgia

A12A0996. WILKINSON COUNTY BOARD OF EDUCATION et al. v. JOHNSON.

DILLARD, Judge.

Following the death of her husband, Violet Johnson sought dependent's benefits from her husband's employer, the Wilkinson County Board of Education. After an administrative-law judge and the State Board of Workers' Compensation (the "Board") denied her claim, Mrs. Johnson appealed to the superior court, which reversed the Board's ruling and remanded the case to the ALJ for further consideration. Wilkinson County now appeals, arguing that the superior court erred in ruling that Mrs. Johnson was entitled to the presumption that her husband's death arose out of and in the course of his employment, in finding that Mr. Johnson's death occurred when he was performing his job duties, and in remanding the case to the

ALJ for a determination of whether Mr. Johnson's death was the result of his employment aggravating a pre-existing medical condition. Because the superior court, the Board, and the ALJ misapplied the law in determining whether Mrs. Johnson was entitled to the presumption that her husband's death arose out of his employment, we vacate the superior court's order, as well as the Board and the ALJ's rulings. Accordingly, we remand the case to the ALJ for further consideration consistent with this opinion.

At the outset, we note that in reviewing a workers' compensation award, this Court must construe the evidence "in the light most favorable to the party prevailing before the appellate division."[1] In addition, the findings of the State Board of Workers' Compensation, when supported by any evidence, are "conclusive and binding, and neither the superior court nor this Court may substitute itself as a factfinding body in lieu of the State Board."[2] But erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, are "subject

---

[1] *Laurens County Bd. of Ed. v. Dewberry*, 296 Ga. App. 204, 205-06 (674 SE2d 73) (2009).

[2] *Id*. at 206.

2

to a de novo standard of review."[3] And when it is determined that the Board or the ALJ decided the case on an erroneous legal theory or improperly applied the law to the facts, the proper course of action is for this Court to remand the case to the ALJ for further findings and consideration.[4]

In the case *sub judice*, the record shows that Harold Johnson was employed as the principal and athletic director for the Wilkinson County High School. His medical history included diagnoses of hypertension, obesity, renal insufficiency, and gout. On the morning of December 16, 2008, Johnson and a school volunteer traveled in Johnson's pickup truck to the Veterans Administration Hospital in Dublin, Georgia, to inspect, and possibly transport, computers that were being donated to the high school. While at the VA, Johnson walked 300 or 400 yards to the warehouse where the computers were stored and then, after determining that there were more computers than they could transport at that time, he walked 300 or 400 yards back to the front of the VA building, where his truck was parked.

---

[3] *Trax-Fax, Inc. v. Hobba*, 277 Ga. App. 464, 464 (627 SE2d 90) (2006).

[4] *See S. Bell Tel. and Tel. Co. v. Hodges*, 164 Ga. App. 757, 761 (3) (298 SE2d 570) (1982).

As they began their trip back to the high school, Johnson and the volunteer first stopped briefly to buy lunch at a nearby fast-food restaurant, and Johnson ate two sandwiches as he drove. About ten minutes after Johnson finished eating, the volunteer noticed that Johnson was driving erratically, fidgeting, and sweating profusely. A minute or so later, the volunteer noticed Johnson attempting to loosen his tie and unbutton his shirt as if to get air. Shortly thereafter, at the volunteer's request, Johnson stopped his truck so that the volunteer could take over driving, which he did for the remainder of the trip.

When they arrived back at the high school, Johnson immediately went to the restroom in the teachers' workroom and, shortly thereafter, to his office. In his office, Johnson's secretary observed that he was sweating profusely, and Johnson asked her to help him unbutton and remove his shirt. The school nurse was then called, and when she arrived at the office, Johnson was propped up on a small sofa, and he asked the nurse to help him because he was "hurting really bad" and "burning up." The nurse measured Johnson's blood pressure, and upon determining that it was significantly elevated, she asked that an ambulance be called. While waiting for the ambulance to arrive, the assistant principal, who was also present in Johnson's office,

asked Johnson whether he had been taking his prescribed blood-pressure medicine, and Johnson replied that he had not.

Several minutes later, paramedics arrived on the scene and transported Johnson to the hospital. There, Johnson's blood pressure was noted as being 196/60, and a CT scan revealed that he had suffered an acute aortic dissection extending from the root of the aorta down the common iliac. Johnson then underwent emergency surgery to repair the artery. Although the surgery was successful, within a few days, Johnson began suffering from metabolic acidosis due to his weakened kidneys. Ultimately, on December 21, 2008, Johnson went into abrupt respiratory arrest and died. A subsequent autopsy indicated that the cause of death was complications of the aortic dissection, specifically an ischemic bowel.

Thereafter, Violet Johnson filed a claim seeking dependency benefits, medical expenses, final expenses, and attorney fees from Wilkinson County on the grounds that her husband's death arose out of and in the course of his employment. Wilkinson County denied Mrs. Johnson's claim for benefits. And following a hearing, the ALJ agreed with Wilkinson County's decision, finding that Mrs. Johnson failed to show by a preponderance of the evidence that her husband's aortic dissection was "attributable to the performance of his usual work of employment." Additionally, the

5

ALJ held that Mrs. Johnson was not entitled to the presumption that her husband's death arose out of and in the course of his employment because he was not found dead in a place where he could reasonably be expected to be in the performance of his job duties. Mrs. Johnson then appealed the denial of benefits to the appellate division of the State Board of Workers' Compensation, which affirmed the ruling of the ALJ.

Consequently, Mrs. Johnson appealed to the Superior Court of Wilkinson County. After the parties filed briefs on the issues, the superior court held that the ALJ erred in concluding that "[b]ecause the deceased employee was not found dead in a place where he could reasonably be expected to be in the performance of his job duties, the claimant is not entitled to the presumption that the deceased employee's death arose out of and in the course of his employment." To the contrary, the superior court held that the incident that resulted in Johnson's death did, in fact, occur at a time and place when he was in the performance of his job duties, and thus, Mrs. Johnson was entitled to the presumption that her husband's death arose out of and in the course of his employment. In addition, the court held that the ALJ should have considered, in light of this presumption, whether a preponderance of the competent and credible evidence showed that the condition which resulted in Johnson's death

6

was an aggravation of a pre-existing condition. In accordance with these holdings, the court reversed and remanded the case for further consideration. Thereafter, Wilkinson County filed an application for discretionary appeal, which we granted. This appeal follows.

As previously noted, Wilkinson County now contends that the superior court erred in ruling that Mrs. Johnson was entitled to the presumption that her husband's death arose out of and in the course of his employment, in finding that Johnson's death occurred when he was performing his job duties, and in remanding the case to the ALJ for a determination of whether Johnson's death was the result of his employment aggravating his pre-existing medical condition. We agree that the superior court erred in ruling that Mrs. Johnson was entitled to the presumption that her husband's death arose out of and in the course of his employment and in finding as a matter of fact that the incident resulting in Johnson's death occurred while he was performing his job duties. Thus, we vacate the superior court's order. Nevertheless, because the ALJ similarly applied an erroneous theory of law in determining that Mrs. Johnson was not entitled to the presumption that her husband's death arose out of and in the course of his employment, we must also vacate the

7

Board and the ALJ's rulings and remand the case to the ALJ for further consideration consistent with this opinion.

The Workers' Compensation Act was enacted "as a humanitarian measure providing relief to the injured employee and protecting employers from excessive damage awards."[5] Specifically, the act was created to provide financial assistance to injured employees who suffer "injury by accident arising out of and in the course of [their] employment."[6] In such cases, the burden of proof is on the claimant to establish the essential elements of his claim, including the fact that the accident arose out of and in the course of his employment.[7] The claimant is aided in his burden by the well-established presumption that "when an employee is found dead in a place where he might reasonably be expected to be in the performance of his duties, it is

___

[5] *Samuel v. Baitcher*, 247 Ga. 71, 73 (274 SE2d 327) (1981) (punctuation omitted).

[6] *See* OCGA § 34-9-1 (4); *see also Slaten v. Travelers Ins. Co.*, 197 Ga. 1, 2-3 (28 SE2d 280) (1943); *Travelers Ins. Co. v. S. Elec., Inc.*, 209 Ga. App. 718, 719 (1) (434 SE2d 507) (1993).

[7] *See, e.g., Publishers Circulation Fulfillment, Inc. v. Bailey*, 215 Ga. App. 136, 137 (449 SE2d 645) (1994); *Argonaut Ins. Co. v. King*, 127 Ga. App. 566, 567 (1) (194 SE2d 282) (1972); *Aetna Cas. & Sur. Co. v. Watson*, 91 Ga. App. 657, 657 (1) (86 SE2d 656) (1955).

presumed that the death arose out of his employment."[8] Once this presumption is found to apply, the claimant has "established a prima facie case . . . that the death arose out of employment," and the burden then shifts to the employer or carrier to produce evidence to rebut the presumption.[9]

Importantly, the presumption that the death arose out of the decedent's employment "arises only where the death is unexplained."[10] Following a "tortured appellate history" of case law on this subject, this Court established what constitutes an "unexplained" death in *Zamora v. Coffee General Hospital*.[11] In light of modern forensic medicine, we noted that it is rarely the case that the decedent's *immediate* cause of death is unexplained.[12] Consequently, if an unexplained immediate cause of death were required before the presumption could apply, "there would be no viability

---

[8] *Int'l Paper Co. v. Gilbourn*, 144 Ga. App. 175, 176 (2) (240 SE2d 722) (1977).

[9] *Gen. Acc. Fire & Life Ins. Co. v. Sturgis*, 136 Ga. App. 260, 263 (221 SE2d 51) (1975).

[10] *Hartford Accident & Indem. Co. v. Trigg*, 144 Ga. App. 74, 76 (240 SE2d 725) (1977).

[11] 162 Ga. App. 82, 84 (290 SE2d 192) (1982).

[12] *Id.*

whatsoever to the 'well established' presumption."[13] We, therefore, adopted the rule that "the presumption is viable only where, under the evidence, the precipitating rather than immediate causative factor in the death is unexplained."[14] Furthermore, this rule also attaches where "the immediate cause of death arises from internal and physical rather than external and non-physical factors."[15] For instance, where the precipitating causative factor of a stroke is known and explained as hypertension, the claimant is not entitled to "rely upon the presumption that the stroke 'arose out of' the deceased's employment but must submit probative evidence on the issue of the causal connection between the stroke and the employment."[16] Thus, the rule is that where the

_____

[13] *Id.*

[14] *Id.* at 85; *see Trigg*, 144 Ga. App. at 76.

[15] *Zamora*, 162 Ga. App. at 85.

[16] *Id.* We note that pursuant to OCGA § 34-9-1 (4), "heart disease, heart attack, the failure or occlusion of any of the coronary blood vessels, stroke, or thrombosis" do not constitute compensable injuries unless "it is shown by a preponderance of competent and credible evidence, which shall include medical evidence, that any of such conditions were attributable to the performance of the usual work of employment." However, the unexplained death presumption satisfies this statute's proof requirement because the decedent's death is thereby presumed to arise out of the decedent's employment. *See Keystone Automotive v. Hall*, 292 Ga. App. 645, 654 (2) (665 SE2d 392) (2008) ("[O]nce the unexplained death presumption arises, no further proof is required to satisfy OCGA § 34-9-1 (4)."). *Cf. Zamora*, 162 Ga. App. at 85 (applying the analysis for the unexplained death presumption in characterizing

10

evidence demonstrates that the precipitating causative factor of a death is known and explained, "neither the claimant, the administrative law judge nor the Full Board is authorized to rely upon the presumption that the death arose out of the employment."[17]

Here, both the ALJ and the Board held that the unexplained death presumption did not arise because Mrs. Johnson's husband died at the hospital and, therefore, was not found dead in a place where he could reasonably be expected to be in the performance of his job duties. However, this conclusion constitutes a misinterpretation of the law given that "the unexplained death presumption has been expanded to include cases in which the employee becomes ill at [his] place of employment and dies from such illness at the hospital."[18] Thus, the superior court correctly held that the ALJ and the Board erred in concluding as a matter of law that

---

"stroke" as an immediate cause of death and "hypertension" as a precipitating cause of death).

[17] *Zamora*, 162 Ga. App. at 85 (punctuation omitted).

[18] *Buschel v. Kysor/Warren*, 213 Ga. App. 91, 94 (4) (444 SE2d 105) (1994); *see also Southwire Co. v. Cato*, 250 Ga. 895, 898 n.2 (302 SE2d 91) (1983); *Sturgis*, 136 Ga. App. at 263.

the unexplained death presumption did not arise in this case because Johnson was not found dead at his place of employment.

Nevertheless, the superior court erred in two respects by holding that the presumption necessarily arose based on the court's finding that the incident "which ultimately resulted in [Johnson's] death *did* occur at a time and place when [Johnson] was in the performance of his job duties." First, in finding that the incident that resulted in Johnson's death occurred while Johnson was performing his job, the superior court improperly substituted itself as a fact-finding body.[19] Indeed, neither the superior court nor this Court has any authority to "substitute itself as a fact finding body in lieu of the Board."[20] Additionally, as noted *supra*, the application of the unexplained-death presumption requires—quite obviously—that the precipitating cause of Johnson's death be unexplained.[21] But here, neither the ALJ nor the superior court made a specific finding as to the precipitating cause of Johnson's death, and

---

[19] *See Laurens*, 296 Ga. App. at 206.

[20] *Jones v. County Bd. of Educ. v. Patterson*, 255 Ga. App. 166, 167 (564 SE2d 777) (2002) (punctuation omitted).

[21] *See Zamora*, 162 Ga. App. at 85.

12

neither determined whether the precipitating cause of the death was ultimately explained.

Accordingly, we vacate the superior court's order and the ALJ's order denying Mrs. Johnson's claim for dependent's benefits, and we remand the case to the ALJ. On remand, the ALJ shall determine if the unexplained-death presumption is applicable by determining whether the incident that resulted in Johnson's death occurred at a time and place in which Johnson might reasonably be expected to be in the performance of his job duties and whether the precipitating cause of Johnson's death is unexplained.[22] If the presumption applies, then Wilkinson County must introduce evidence "to show that the death *did not* arise out of the employment to overcome the presumption."[23] And the presumption that a death was employment-related cannot be overcome by "presenting evidence that the death 'might not have' been employment related but the evidence must show that the death 'did not' arise out of the employment."[24] However, if the ALJ determines that the presumption is not applicable, then Mrs. Johnson has the burden of showing by a preponderance of the

---

[22] *See id.* at 85-86.

[23] *Id.* at 86 (punctuation omitted).

[24] *Keystone Automotive*, 292 Ga. App. at 654 (1) (punctuation omitted).

13

evidence that the incident resulting in her husband's death was attributable to the performance of the usual work of his employment.[25]

*Judgment vacated and case remanded with direction. Ellington, C. J., and Phipps, P. J., concur.*

---

[25] *See* OCGA § 34-9-1 (4).

14