### A11A0307. BONUS STORES, INC. et al. v. HENSLEY.
(710 SE2d 201)

ELLINGTON, Chief Judge.

In this workers' compensation action, an administrative law judge ("ALJ") for the State Board of Workers' Compensation granted Edward Hensley's claim for temporary total disability benefits after finding that Hensley had sustained a catastrophic injury arising out of and in the course of his employment. Bonus Stores, Inc. and Specialty Risk Services (collectively, the "employer") appealed to the Board's Appellate Division, which reversed the decision of the ALJ after finding that the preponderance of the competent and credible evidence did not support the catastrophic designation. Hensley appealed to the Superior Court of Greene County, which reversed the decision of the Appellate Division, based on its conclusion that the Appellate Division improperly applied a de novo standard of review. We granted the employer's application for a discretionary appeal, and the employer appeals, contending the superior court misconstrued the law that applied to the Appellate Division's review of the ALJ's award and to the superior court's review of the Appellate Division's decision.[1] For the reasons explained below, we reverse the decision of the superior court.

The record shows that Hensley injured his back in March 2002 when he was working for the employer as the general manager at Bill's Dollar Store. The employer accepted the claim as compensable and paid Hensley temporary total disability benefits through November 2003, then partial disability benefits until November 2008. After the employer stopped paying benefits, Hensley requested a catastrophic designation for his injury. At the hearing, the ALJ received into evidence a letter dated November 5, 2003, from Hensley's family physician, Dr. Wesley Ensley, in which Dr. Ensley opined that, as of that date, Hensley "is totally disabled from physical labor in his current condition. This determination has been attained after evaluating the records at hand and weighing the patient's subjective assessment of his ability to perform physical work." The ALJ also received a questionnaire regarding Hensley's residual functional capacity that Dr. Ensley prepared for the Social Security Administration in September 2004, in which he diagnosed Hensley with

---

[1] See OCGA § 5-6-35 (a) (1).

neuropathy and chronic persistent pain and stated that Hensley could sit and stand or walk less than two hours each in a work day and would have to take frequent and prolonged unscheduled rest breaks. In addition, the ALJ received a written "vocational assessment" prepared by William Thompson, a vocational specialist, who interviewed Hensley in November 2007 and reviewed his medical records. In his written report, Thompson opined that there is no work available in substantial numbers within the national economy which Hensley is capable of performing.

Among other documents, the employer offered a report prepared by Dr. Lee Kelley, an orthopedist, who examined Hensley in December 2003 and reviewed an MRI of his lower back and concluded that Hensley could return to work with no restrictions. The employer also offered a report prepared by Dr. Thomas Dopson, a spine specialist, who examined Hensley in July 2005 and found no orthopedic, neurologic, radiographic, or other objective clinical basis for any employment restrictions. In addition, the employer offered a report prepared by Dr. Ezequiel Cassinelli, another orthopedist, who evaluated Hensley in May 2009 and concluded that Hensley had reached maximum medical improvement from his March 2002 back injury the following year and that he had no remaining impairment in connection with that injury.

At the hearing, in addition to Hensley's own testimony, the ALJ heard the testimony of Thompson, the vocational specialist. Thompson testified that, since preparing his written vocational assessment, he had reviewed Dr. Cassinelli's findings and that, if the ALJ found those findings to be credible, there would be jobs that Hensley could perform.

The ALJ concluded that Hensley's back injury was catastrophic, finding that it was "of such a nature and severity that it prevents [Hensley] from being able to perform his prior work and any work available in substantial numbers within the national economy for which he is otherwise qualified."[2] The ALJ's award shows that the ALJ relied primarily on Dr. Ensley's November 2003 evaluation, which he reiterated in the September 2004 questionnaire, and on Thompson's written vocational assessment.

The record shows that, in ruling on the employer's appeal of the ALJ's decision to the Appellate Division, the Appellate Division considered the entire record that was before the ALJ. The Appellate Division noted that, although Dr. Ensley and Thompson had con-

---

[2] OCGA § 34-9-200.1 (g) defines a catastrophic injury, inter alia, as any injury "of a nature and severity that prevents the employee from being able to perform his or her prior work and any work available in substantial numbers within the national economy for which such employee is otherwise qualified[.]" OCGA § 34-9-200.1 (g) (6) (A).

cluded that Hensley could not perform any jobs in the national economy, Dr. Cassinelli and other specialists had more recently concluded that Hensley could work with no or few restrictions. After viewing the record as a whole, the Appellate Division

> assign[ed] greater weight to the consensus of the examining physicians, which assign little or no injury-related work limitations to [Hensley]. Finding those medical opinions to be credible, [the Appellate Division] also [found] that [Hensley] is capable of performing jobs in the national economy, and that the preponderance of competent and credible evidence does not support the award of catastrophic designation under OCGA § 34-9-200.1 (g) (6).

Accordingly, the Appellate Division vacated the ALJ's award and denied Hensley's request that his injury be designated as catastrophic.

Hensley appealed the Appellate Division's ruling to the superior court, asserting that the Appellate Division had exceeded its authority, that it had misapplied the law, and that the evidence did not support its findings. The superior court found that the Appellate Division committed legal error by improperly applying a de novo standard of review and that the application of the correct standard of review required a finding that the ALJ's award designating Hensley's injuries as catastrophic was supported by the preponderance of the competent and credible evidence.

1. The employer contends that the superior court erred in ruling that the Appellate Division committed legal error by improperly applying a de novo standard of review to the ALJ's findings of fact.

As amended in 1994,[3] OCGA § 34-9-103 (a) provides, in pertinent part, that, when the Appellate Division of the State Board of Workers' Compensation reviews an ALJ's decision, the ALJ's findings of fact "shall be accepted by the [A]ppellate [D]ivision where such findings are supported by a preponderance of competent and credible evidence contained within the records." Since the 1994 amendment, as we have explained, the Appellate Division may no longer hear additional evidence but is limited to the record established in the trial division, that is, the evidence that was received by the ALJ. *Home Depot v. McCreary*, 306 Ga. App. 805 (1) (703 SE2d 392) (2010). Even so, the Appellate Division

> *must* weigh the evidence and assess the credibility of witnesses and[,] if it determines that the award of the ALJ

---

[3] See Ga. Laws 1994, p. 887, § 8.

is supported by a preponderance of admissible evidence, [the ALJ's award] will be accepted. But, if after assessing the evidence of record, the [A]ppellate [D]ivision concludes that the award does not meet the statutes' evidentiary standards, the [A]ppellate [D]ivision may substitute its own alternative findings for those of the ALJ, and enter an award accordingly.

(Citations omitted; emphasis supplied.) *Bankhead Enterprises v. Beavers*, 267 Ga. 506, 507 (480 SE2d 840) (1997). Although the Appellate Division's review is not strictly de novo, the Appellate Division is a trier of fact, "authorized to assess witness credibility, weigh conflicting evidence, and draw factual conclusions different from those reached by the ALJ who initially heard the dispute." (Citation omitted.) *Home Depot v. McCreary*, 306 Ga. App. at 808 (2).[4]

The record shows that, after weighing the evidence received by the ALJ, the Appellate Division concluded that the preponderance of the competent and credible evidence did not support the ALJ's catastrophic injury finding. It therefore substituted its own findings for those of the ALJ, as it was authorized to do. *Bankhead Enterprises v. Beavers*, 267 Ga. at 507. Thus, the Appellate Division performed the appropriate review here, and the superior court erred in finding otherwise.

2. The employer contends that the Appellate Division's decision was supported by evidence in the record and, therefore, that the superior court erred in reversing the Appellate Division's judgment. Unlike the Appellate Division, which may weigh the evidence heard by the ALJ and substitute its own alternative findings for those of the ALJ, as explained more fully in Division 1, supra, a superior court that is reviewing a decision of the Appellate Division performs a more limited review. The factual findings of the Board's Appellate Division, when supported by any evidence, are conclusive and binding upon the superior court, and the superior court may not substitute itself as a fact-finding body in lieu of the Board. OCGA § 34-9-105 (c); *Keystone Automotive v. Hall*, 292 Ga. App. 645, 647-648 (1) (665 SE2d 392) (2008); see also James B. Hiers, Jr., et al., *Ga. Workers' Comp. Law & Practice*, § 14-4 (5th ed., updated 2010-2011).[5] Likewise, the findings of the Board's Appellate Division, when supported by any evidence, are

---

[4] See also *Logan v. St. Joseph Hosp.*, 227 Ga. App. 853, 858 (2) (490 SE2d 483) (1997) ("Evaluating the competency and credibility of the evidence, the [A]ppellate [D]ivision performs a hybrid review function and decides whether the greater weight lies with the ALJ's findings. If so, it must accept them; if not, it can substitute its own findings.") (citation and punctuation omitted) (physical precedent only).

[5] The only grounds for appeal to the Superior Court are the following:

(1) The members acted without or in excess of their powers;

conclusive and binding upon this Court, when reviewing a decision of the superior court, and this Court may not substitute itself as a fact-finding body in lieu of the Board. *Keystone Automotive v. Hall*, 292 Ga. App. at 647-648 (1). "The question of whether the [superior] court applied the correct legal standard in evaluating the evidence, however, is one of law, which we review de novo." (Citation and punctuation omitted.) Id. at 647 (1).

As detailed above, the findings of Dr. Cassinelli and other doctors, together with Thompson's written assessment and testimony, provided evidence that, at least by the time of the Appellate Division's judgment, Hensley's back injury was not of a nature and severity that it prevented him from being able to perform any work available in substantial numbers within the national economy for which he was otherwise qualified. Because the Appellate Division's finding that Hensley's injuries were not catastrophic was supported by some evidence, the superior court erred in weighing the evidence and in substituting its judgment for that of the Appellate Division. *Jered Indus. v. Pearson*, 261 Ga. App. 373, 374-375 (582 SE2d 522) (2003).

3. In light of our ruling in Divisions 1 and 2, supra, the employer's remaining argument is moot.

*Judgment reversed. Miller, P. J., and Doyle, J., concur.*

DECIDED APRIL 5, 2011 — 

*Swift, Currie, McGhee & Hiers, Todd A. Brooks, M. Ann McElroy,* for appellants.

*Westmoreland, Patterson, Moseley & Hinson, Thomas W. Herman,* for appellee.

---

(2) The order or decree was procured by fraud;

(3) The facts found by the members do not support the order or decree;

(4) There is not sufficient competent evidence in the record to warrant the members in making the order or decree complained of; or

(5) The order or decree is contrary to law.

OCGA § 34-9-105 (c).