**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**July 5, 2012**

# In the Court of Appeals of Georgia

A12A0678. DECOSTAR INDUSTRIES, INC., et al. v. JUAREZ.

MIKELL, Presiding Judge.

Decostar Industries, Inc., and American Zurich Ins. Co. c/o Gallagher-Bassett Services, Inc. (collectively "Decostar"), filed a discretionary appeal of the trial court's order reversing a decision of the appellate division of the State Board of Workers' Compensation (the "Board") in the employer's favor. Decostar contends that the trial court applied the wrong standard of review. Finding error, we reverse.

> In reviewing a workers' compensation award, this Court must construe the evidence in the light most favorable to the party prevailing before the appellate division. The findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and

binding, and neither the superior court nor this Court may substitute itself as a factfinding body in lieu of the State Board.[1]

"So long as there is some evidence to support the State Board's decision, . . . judges lack authority to set aside an award based on disagreement with the Board's conclusions."[2] However, "[t]he question of whether the superior court applied the correct legal standard in evaluating the evidence . . . is one of law, which we review de novo."[3]

The record reflects that Sonia Juarez began working on Decostar's production line in 2006. Her duties included moving automotive bumpers weighing approximately 15 pounds from the floor to a chest-level bench; using a blade to cut two holes in them; sanding them; placing them at a separate work station; and later placing them into a mold. In August 2009, Juarez began to experience pain in her

---

[1] (Footnotes omitted) *Laurens County Bd. of Ed. v. Dewberry*, 296 Ga. App. 204, 205-206 (674 SE2d 73) (2009).

[2] (Citations and punctuation omitted.) *Lowndes County Bd. of Commrs. v. Connell*, 305 Ga. App. 844-845 (701 SE2d 227) (2010).

[3] (Citation and punctuation omitted.) *Bonus Stores v. Hensley*, 309 Ga. App. 129, 133 (2) (710 SE2d 201) (2011).

right shoulder and arm, and reported it to her employer.[4] Because Decostar did not offer medical treatment, she saw her own general practice physician, Dr. Gonzalez, who referred her to an orthopedist, Dr. Anthony Colpini. She complained to Dr. Colpini of neck and bilateral shoulder pain. An MRI showed, among other things, "mild to moderate bilateral C5-C6 [vertebra] neural foraminal stenosis" involving a neural issue which Dr. Colpini believed was causing Juarez's pain. He also diagnosed her with, among other things, tendinosis, shoulder impingement, and a pre-existing fusion of her C6-C7 vertebra. He opined that this fusion may have made her problems at the C5-C6 vertebra worse. Colpini also deposed that Juarez told him she had previously had tendonitis and surgery on her left shoulder. Another physician surgically removed a lipoma from Juarez's right shoulder in October 2009. Dr. Colpini on January 20, 2010, placed Juarez on work restrictions. He concluded that Juarez's injuries, while not caused by her work, were aggravated by her job duties.

Juarez resigned on April 13, 2010, because of the injury to her right shoulder. Juarez saw Dr. Robert Karsch on May 10, 2010, and again on June 17, 2010. After an MRI, he diagnosed her with, among other things, rotator cuff tendinopathy and

---

[4] Decostar says it first received notice of Juarez's injuries on January 20, 2010, although Juarez says she reported them to her employer in October 2009.

3

impingement syndrome, finding that the *direct cause* of her shoulder injury and pain was the repetitive nature of her job, as opposed to being an aggravation of a pre-existing condition, as Dr. Colpini had opined. After an independent review of the medical records, Dr. Duncan Wells on behalf of Juarez issued an opinion agreeing with Dr. Karsch that Juarez's injuries were a direct result of her job duties.

After a hearing, a Board administrative law judge ("ALJ") concluded that Juarez aggravated a long-standing right shoulder condition by performing her repetitive job duties; that she was not entitled to temporary total disability benefits from the date of her resignation because light-duty work remained available to her; that she was not entitled to change her treating physician from Dr. Colpini to Dr. Karsch; and that Decostar was only responsible for MRI expenses. Juarez appealed, and the Board's appellate division adopted the ALJ's decision. Juarez then appealed to the superior court, which, after a hearing, found in her favor, reversing the findings of the Board's appellate division. The trial court concluded that because the record contained "absolutely no evidence that Employee suffered from any pre-existing medical condition or impairment prior to working for Employer, the State Board should have ruled that Employee suffered a new injury rather than an aggravation of a pre-existing condition"; that the Board erred in refusing to make Dr. Karsch the

4

treating physician; and that Decostar was responsible for expenses incurred after May 10, 2010. We granted Decostar's discretionary appeal.

1. Decostar argues that the trial court's decision to designate the claim as a new injury rather than an aggravation of a pre-existing injury results from its improper reinterpretation of evidence and misapplication of the standard of review. We agree.

Although the opinions of Dr. Colpini, in viewing the injury as an aggravation of a pre-existing condition, differed from the opinions of Drs. Karsch and Wells, who viewed this as a new injury, the Board was entitled to believe Dr. Colpini. The record contains ample evidence, including, among other things, Dr. Colpini's testimony about his observations and diagnoses related to Juarez's pre-existing conditions in both her shoulders and her neck, as well as medical records dating back to 2003, to support the ALJ's finding of an aggravation to a pre-existing injury.

"[D]eterminations of credibility and the weight of testimony are for the ALJ and appellate division, not for . . . [the] reviewing court."[5] The ALJ is free to believe the testimony of one witness over that of other witnesses.[6] The ALJ in the case sub

---

[5] (Citation omitted.) *Metro Interiors v. Cox*, 218 Ga. App. 396, 398 (461 SE2d 570) (1995).

[6] See *Parham v. Swift Transp. Co.*, 292 Ga. App. 53, 56 (663 SE2d 769) (2008); *YKK (USA), Inc. v. Patterson*, 287 Ga. App. 537, 539 (2) (652 SE2d 187) (2007) (the Board may determine the weight and credit to be given to the opinions of physician witnesses, and may resolve fact issues arising from evidentiary conflicts).

judice chose to believe Dr. Colpini although his testimony was contradicted by other evidence. "Because courts reviewing a decision of the Appellate Division are not authorized to weigh the evidence in the first instance or substitute their own findings of fact for those of the Appellate Division, the superior court had no authority to interfere with the decision of the Appellate Division."[7] The ALJ and appellate division were authorized to conclude that Juarez had a pre-existing condition that was aggravated by her job duties. Thus, the trial court erred when it found that the record contains "no evidence" that Juarez suffered from medical conditions that predate her work for Decostar. We reverse.

2. Decostar argues that the superior court misapplied the standard of review and usurped the Board's decision-making authority when it remanded the case, designating Dr. Karsch as the new, authorized treating physician and finding that Decostar should pay Juarez's medical expenses incurred after May 10, 2010.

A superior court properly reviews the Board's decision on a request for a change in physicians by considering whether the Board acted arbitrarily or in excess

---

[7] (Citation omitted.) *Ga. Mountain Excavation v. Dobbins*, 309 Ga. App. 155, 157 (710 SE2d 205) (2011).

of its powers.[8] The Board denied Juarez's request to change her physician to Dr. Karsch, instead authorizing Dr. Colpini to continue to provide medical treatment. We find error, as the Board's decision was neither arbitrary nor capricious given that the Board chose to believe Dr. Colpini's diagnosis as opposed to Dr. Karsch's, as discussed in Division 1.

Juarez argues on appeal that Karsch became her treating physician as soon as the complaint became compensable and thus the Board "erroneously never *recognized* Dr. Karsch as the authorized treating physician."[9] She also argues that the Board lacked the authority to *change* her treating physician from Dr. Karsch to Dr. Colpini in that the written notice and response procedures mandated by OCGA § 34-9-200 (b) were not followed.

These arguments are unavailing, as Juarez did not raise before the Board's appellate division either the issue of written notice and response or the allegation that the Board erred in never *recognizing* that Karsch had been her treating physician.[10]

---

[8] *Franchise Enterprises v. Sullivan*, 190 Ga. App. 767, 769 (1) (380 SE2d 68) (1989).

[9] (Emphasis supplied.)

[10] Juarez provides no citations to the record indicating that she raised these issues before the Board. "We have repeatedly held that it is not the function of this court to cull the record on behalf of a party." (Punctuation and footnote omitted.) *Reid v. Ga. Bldg. Auth.*, 283 Ga. App. 413 (641 SE2d 642) (2007).

7

Rather, she argued to the Board's appellate division only that Karsch "should be named as Employee's authorized treating physician *going forward*."[11] "Issues not raised to the [B]oard cannot be considered on appeal."[12] As Dr. Karsch is not Juarez's treating physician, and in light of our findings in Division 1, it follows that his bills may not be reimbursed. We reverse.

*Judgment reversed. Miller and Blackwell, JJ., concur.*

---

[11] (Emphasis supplied.)

[12] (Citations omitted.) *Dart Container Corp. v. Jones*, 209 Ga. App. 331, 332 (433 SE2d 417) (1993).