**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 8, 2017**

# In the Court of Appeals of Georgia

A17A1294. AUTOZONE, INC. et al. v. MESA.

REESE, Judge.

The Appellant, Autozone, Inc., seeks review of a judgment of the Superior Court of Columbia County that reversed a ruling of the State Board of Workers' Compensation ("Board"), which denied certain benefits to the Appellee, Eulalia Mesa.[1] The Appellant contends that the superior court misapplied the "any evidence" standard when reviewing the Board's ruling and erred in finding that the Administrative Law Judge ("ALJ"), who initially denied the Appellee's claim, acted "contrary to law." For the reasons set forth, infra, we reverse.

---

[1] This Court granted the Appellant's application for discretionary review.

Viewed in the light most favorable to the Appellant, as the party who prevailed before the Board,[2] the record reveals the following, undisputed facts.[3] In November 2010, while the Appellee was working for the Appellant as a clerk and delivery driver, the truck the Appellee was driving was "rear-ended" by another car, and the accident injured her back and neck. She was treated in an emergency room, followed by outpatient treatment, during which several physicians diagnosed her with neck and lower back pain. Shortly after the accident, the Appellee returned to fully paid, full-time work for the Appellant in a light-duty status, performing only clerical duties because her medication made her too dizzy to drive a delivery truck. In January 2011, a treating physician cleared her to drive the delivery truck, and she resumed her delivery duties for the Appellant.

The Appellee continued to receive physical therapy for lower back pain and, in February 2011, received a lumbar magnetic resonance imaging ("MRI") scan. After reviewing the lumbar scan, one of the Appellee's physicians, Dr. John Rumbaugh,

---

[2] See *YKK (USA), Inc. v. Patterson*, 287 Ga. App. 537 (652 SE2d 187) (2007).

[3] The parties in this case waived an evidentiary hearing before the ALJ and agreed that the ALJ would base its ruling on the parties' briefs, their joint stipulations to many of the relevant facts, and the Appellee's medical records. These facts are drawn from the stipulations and medical records.

opined that the scan was "normal." In June 2011, the Appellee was referred to Dr. Allen Goodrich, who determined that her lumbar MRI scan showed a "completely normal disk and spinal canal," opined that she had reached her maximum medical improvement, and released her to full work duties. Dr. Goodrich's records from August 2011 stated that, in his opinion, the Appellee had no conditions that required surgical intervention.

In September 2011, the Appellee underwent another lumbar MRI scan. Dr. Amar Rajadhyaksha opined that the scan showed no gross disc herniations, spinal stenosis, or nerve root impingement, nor did it indicate any conditions that could be actively treated. His physical examination of the Appellee showed no focal sacroiliac joint tenderness, and the results of his clinical tests were negative. Based on these findings, he placed the Appellee at maximum medical improvement with no work restrictions and issued a zero percent impairment rating.

The same month, the Appellee was evaluated by a physical therapist, who opined that, in order to address the Appellee's lower back pain, she needed "skilled rehabilitative therapy in conjunction with a home exercise program," with visits to the therapist three times a week for four weeks. According to the therapist, the Appellee's "[o]verall rehabilitation potential is good." Despite the recommended

frequency of visits, however, the record does not show that the Appellee attended more than one other physical therapy session, which was conducted a week after the first.

In October 2011, the Appellee saw Dr. Tamar Ference, who ordered MRIs and x-rays of the Appellee's cervical and lumbar spine. The Appellee's cervical spine MRI showed "no significant abnormality." Dr. Ference recommended that the Appellee get physical therapy and that she not work until her condition improved.

In January 2012, the Appellee was examined by Dr. Jonathan Hyde, who ordered a lateral lumbosacral x-ray that, upon review, he considered to be "normal." He also reviewed two separate MRIs performed in 2011 by prior physicians and found no disc herniations or significant desiccation. Dr. Hyde recommended an electromyogram ("EMG") with nerve conduction study, the results of which were determined to be "unremarkable." Dr. Hyde also performed a diagnostic right sacroiliac joint injection using fluoroscopy, and the Appellee reported that the procedure provided one to two days of significant pain relief. Dr. Hyde opined that the injection was diagnostically positive for sacroiliac dysfunctional pain. Dr. Hyde recommended a surgical fusion of the Appellee's right sacroiliac joint, also known as arthrodesis, and classified her as "off work status." The Appellee declined to

undergo the surgery and continued to work for the Appellant until March 2012, when she stopped working, reportedly due to back pain. Dr. Hyde then restricted the Appellee to light-duty work, and she received total temporary disability benefits until April 2012.

The Appellee had three appointments with Dr. Hyde over the next two and a half years to address her complaints of ongoing back pain. Following the Appellee's visit in May 2012, Dr. Hyde noted that "[t]his patient is fully capable of working within the restrictions given. There is no change in restrictions. The only question is, does she want to go back to work?" During the Appellee's visit in September 2013, Dr. Hyde ordered a lateral lumbosacral x-ray, and he concluded that the image showed no changes from previous images of the same area that were considered "normal." During an appointment with the Appellee over a year later, in December 2014, Dr. Hyde did not conduct any additional tests, although he again noted that the Appellee's lumber MRIs from 2011 were "normal." However, he recommended a surgical sacroiliac joint fusion to address her right-side sacroiliac dysfunction pain. The Appellee decided to have the surgery and sought approval for it under workers' compensation.

In April 2015, the Appellant sent the Appellee for an independent medical evaluation ("IME") with Dr. Peter Millheiser, who performed a physical examination of the Appellee and reviewed her medical records from other treating physicians, including Dr. Hyde, as well as all of the x-rays, MRIs, and test results. Dr. Millheiser diagnosed the Appellee with a right sacroiliac joint sprain, a cervical sprain, and a lumbar sprain. Still, he found no evidence of sacroiliac dysfunction or permanent impairment. He opined that the Appellee was able to do regular daily activities and regular work without restrictions, and concluded that she was at an "endpoint" in treatment. The Appellee had no other medical appointments or treatment related to her work injury after her examination by Dr. Millheiser in April 2015.

In addition to these facts, it is undisputed that, although the Appellee was unemployed for two years after leaving her job with the Appellant in March 2012, she became a nanny for a family with a six-year-old boy in March 2014, working six to seven hours per day, five days per week caring for the boy and performing household chores. It follows that the Appellee was employed as a full-time nanny at the time she saw Dr. Hyde in December 2014 and Dr. Millheiser in April 2015, and was still employed there in April 2016, after she filed the instant workers' compensation claim.

The Appellant denied responsibility for the Appellee's sacroiliac joint fusion surgery, and the parties agreed to have the ALJ resolve the matter on the submission of briefs and documentary evidence alone, without a hearing, as the only issue to be decided by the ALJ was whether the sacroiliac joint fusion surgery was reasonable and necessary. After reviewing the evidence and the briefs, the ALJ denied the Appellee's request for benefits, finding that the surgery was not reasonable or necessary. The ALJ based his finding "particularly" on Dr. Millheiser's opinion that the Appellee had no sacroiliac joint dysfunction as of April 2015. The ALJ explained that he was not persuaded by Dr. Hyde's opinion because Dr. Millheiser's April 2015 opinion was supported by numerous earlier medical opinions finding no joint dysfunction.

The Appellee appealed to the Board, which adopted the ALJ's decision, finding that the ALJ was in the best position to determine the credibility and weight of evidence in the record. The Board adopted the ALJ's findings of fact on the basis they were supported by a preponderance of competent and credible evidence, and stated that the ALJ appropriately applied the law to those findings.[4]

---

[4] See OCGA § 34-9-103 (a) (If a ruling by the ALJ is appealed to the Board, the ALJ's findings of fact "shall be accepted by the [Board] where such findings are supported by a preponderance of competent and credible evidence contained within the records.").

The Appellee sought review in the superior court,[5] which set aside the Board's decision and ruled in favor of the Appellee. The court stated that it conducted only a limited review of the factual findings of the ALJ and Board, acknowledging that those facts were conclusive and binding upon the court if they were supported by any evidence and the court was not authorized to substitute itself as a fact-finding body. Even so, the court found that the record contained "no objective medical evidence" that the proposed surgery was not "reasonably required and calculated to effect a cure, give relief, or restore the [Appellee] to suitable employment." The court explained that Dr. Hyde based his diagnosis and recommendation for surgery on the results of a diagnostic sacroiliac joint injection, unlike Dr. Millheiser, who performed no "medical testing of any kind" on the Appellee but, instead, relied upon his physical examination of the Appellee and his review of her medical records and test results. The court also found that the decision of the ALJ and the Board was contrary to law, because OCGA § 34-9-200 (a)[6] requires an employer to provide benefits for treatment

[5] See OCGA § 34-9-105 (b).

[6] OCGA § 34-9-200 (a) (1) provides, in relevant part, as follows:
For all injuries occurring on or before June 30, 2013, . . . the employer shall furnish the employee entitled to benefits under this chapter such medical, surgical, and hospital care and other treatment, items, and services which are prescribed by a licensed physician, . . . which in the judgment of the State

8

to injured workers that is prescribed by a licensed physician in order to provide relief for work-related injuries. The court expressed its concern that the Board relied on the strength of Dr. Millheiser's opinion in relieving the Appellant of its "obligation to furnish medical treatment prescribed by the [Appellee's] authorized treating physician." Consequently, the court set aside the Board's decision and remanded the case "for further review in keeping with the findings of this Court." This appeal followed.

> In reviewing an award of workers' compensation benefits, both the superior court and this Court are required to construe the evidence in a light most favorable to the party prevailing before the State Board. It is axiomatic that the findings of the Board, when supported by any evidence, are conclusive and binding, and that neither the superior court nor this Court has any authority to substitute itself as a fact finding body in lieu of the Board.[7]

---

Board of Workers' Compensation shall be reasonably required and appear likely to effect a cure, give relief, or restore the employee to suitable employment.

[7] *YKK (USA), Inc.*, 287 Ga. App. at 537 (citations and punctuation omitted). See OCGA § 34-9-105 (c) (4), (5) (The Board's findings shall be conclusive upon the superior court unless, inter alia, there is not sufficient competent evidence to warrant the Board's decision or the Board acted contrary to law.).

"The question of whether the trial court applied the correct legal standard in evaluating the evidence, however, is one of law, which we review de novo."[8] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

In two related enumerated errors, the Appellant contends that the trial court misapplied the "any evidence" standard of review to the conclusion by the ALJ and Board that the joint fusion surgery was not reasonable or medically necessary. According to the Appellant, the court improperly construed the "any evidence" standard so that it was only required to consider medical opinions if they were supported by "objective medical evidence." Further, the Appellant argues that the court erred in finding that the award of the ALJ and the Board was "contrary to law" on the basis that the ALJ assigned greater weight to Dr. Millheiser's opinion than to Dr. Hyde's opinion. The Appellant contends that the court's order shows that it impermissibly substituted its own judgment for that of the ALJ as to the weight to be assigned to the conflicting opinions of Dr. Hyde and Dr. Millheiser.

---

[8] *Harris v. Peach County Bd. of Commrs.*, 296 Ga. App. 225, 225-226 (674 SE2d 36) (2009) (citation and punctuation omitted).

It is axiomatic that, when a Board's decision is appealed to the superior court, the Board's decision is deemed conclusive and may not be set aside unless the court finds that there was insufficient competent evidence to support the decision, the decision is contrary to law, or another specific statutory basis exists.[9] In making this determination, the court is not authorized to disregard competent evidence that it believes is not credible, reweigh the evidence, or resolve conflicting evidence, as these powers are reserved solely for the ALJ and the Board.[10]

In this case, there was substantial competent evidence to support the conclusion of the ALJ and the Board that the joint fusion surgery was not reasonable or medically necessary. As shown above, it is undisputed that all of the Appellee's x-rays, MRI scans, and nerve conduction tests were deemed "normal" and/or

---

[9] See OCGA § 34-9-105 (c) (4), (5); see also OCGA § 34-9-105 (d) ("No decision of the [B]oard shall be set aside by the court upon any grounds other than one or more of the grounds stated in subsection (c) of this Code section.").

[10] See *YKK (USA), Inc.*, 287 Ga. App. at 539 (2) ("It is well established that an award of the Board will not be disturbed where there is any evidence to support it. It is within the province of the Board to determine the weight and credit to be given to the testimony of the witnesses, including the opinion testimony of physician witnesses, and to resolve issues of fact arising from conflicts in the evidence. Furthermore, it is well settled that opinions of medical experts are advisory only and may be accepted or rejected by the [B]oard.") (citations and punctuation omitted); see also *Bibb County Bd. of Ed. v. Bembry*, 286 Ga. App. 878, 879-880 (650 SE2d 427) (2007) (It is within the province of the Board to resolve issues of fact arising from contradictory opinions of physician witnesses.).

11

"unremarkable." Moreover, several physicians who examined the Appellee over the years, in addition to Dr. Millheiser, found no pathology or other condition that required joint fusion surgery. Thus, the superior court was not authorized to reverse the ruling of the ALJ and the Board based upon a lack of supporting competent evidence.[11]

Further, while Dr. Millheiser did not conduct any "objective" medical tests on the Appellee, it is undisputed that he examined her and reviewed all of her medical records and test results, *including* the results of the diagnostic injection that Dr. Hyde apparently relied upon exclusively in making his diagnosis and recommendation for surgery. Thus, both physicians relied upon the *same* results of "objective" medical tests in reaching their opinions. It appears that they simply disagreed as to whether the results of the diagnostic injection demonstrated the need for the recommended surgery. As stated above, it was for the ALJ and the Board to determine which opinion was more credible and resolve this conflict, not the superior court.[12]

---

[11] See *YKK (USA), Inc.*, 287 Ga. App. at 539 (2); *Bibb County Bd. of Ed.*, 286 Ga. App. at 881.

[12] See *YKK (USA), Inc.*, 287 Ga. App. at 539 (2).

Consequently, we conclude that the superior court exceeded its authority when it substituted itself as the factfinder in lieu of the ALJ and the Board and assigned less credibility and weight to Dr. Millheiser's opinion simply because the physician had not conducted additional "objective" medical tests on the Appellee before reaching a diagnosis.[13] Because the court's order was based upon an impermissible resolution of a conflict in the evidence, it erred in reversing the decision of the Board.[14]

*Judgment reversed. Miller, P. J., and Doyle, J., concur.*

---

[13] See *Hughston Orthopedic Hosp. v. Wilson*, 306 Ga. App. 893, 897 (1) (703 SE2d 17) (2010); *Bibb County Bd. of Ed.*, 286 Ga. App. at 881.

[14] See OCGA § 34-9-105 (c), (d); see also *YKK (USA), Inc.*, 287 Ga. App. at 539-540 (2).