**THIRD DIVISION**
**MCFADDEN, P. J.,**
**REESE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 13, 2019**

# In the Court of Appeals of Georgia

A18A2015. MCCRARY v. GEORGIA EMPLOYEE
    RETIREMENT SYSTEM.

REESE, Judge.

The Appellant, Joann McCrary, appeals a judgment of the Superior Court of Fulton County that affirmed a ruling of the State Board of Workers' Compensation ("Board"), which denied certain benefits to her from her employer, the Georgia Employees' Retirement System ("the Appellee").[1] The Appellant contends that the superior court erred in affirming the decision of the Board to deny her request for a catastrophic designation of her job-related injury. For the reasons set forth infra, we affirm.

---

[1] This Court granted the Appellant's application for discretionary review.

Viewed in the light most favorable to the Appellee, as the party who prevailed before the Board,[2] the record reveals the following facts. From 2005 until 2011 when the Appellant had surgery on her right wrist, the Appellant worked for the Appellee as a customer service specialist. As a customer service specialist, the Appellant's duties consisted of taking incoming calls from employees inquiring about their benefits, typing up the information pertaining to the calls, and entering this data into the Appellee's system.

During the course of her employment with the Appellee, the Appellant's right hand became swollen and painful, and she could "barely move [her] fingers[.]" The Appellant received treatment through the workers' compensation system from Dr. Joseph Wilkes. Dr. Wilkes performed surgeries on the Appellant's right wrist in February 2011 and in August 2011. The Appellant testified before the Administrative Law Judge ("ALJ") that after the surgeries, she could not type or use her right hand very well. She averred that she did not return to work after her surgeries and was terminated for failing to return to work when asked. On cross-examination, the Appellant testified that she submitted two separate applications to the Social Security

---

[2] See *Autozone, Inc. v. Mesa*, 342 Ga. App. 748 (804 SE2d 734) (2017).

Administration ("SSA") for benefits for problems with her right wrist and that both applications were denied.

In 2015, Dr. Wilkes documented that the Appellant's disability was "permanent and stable[.]" In 2016, Dr. Wilkes wrote in a status report that "[the Appellant] is unable to type for any length of time and should be on no typing." The Appellee accepted the Appellant's workers' compensation claim as compensable, and the Appellee received medical care, temporary total disability benefits, temporary partial disability benefits, and permanent partial disability benefits. In 2016, the Appellant sought a designation of catastrophic injury and the payment of income benefits.

At the hearing before the ALJ, the Appellant tendered a report completed by Dr. Frank Joseph based on an independent medical evaluation of her in September 2012. Dr. Joseph wrote that, "[a]t this time the patient clearly cannot return to her original job description. Realistically, the patient will probably never be able to return to work with any reasonable function of the right upper extremity. At best, the patient could return to work with no use of the right upper extremity on a permanent basis."

The Appellant also tendered a November 2012 functional capacities evaluation ("FCE") report, in which the examiner found her to be "employable in a [s]edentary physical demand level, but the job must not require more than 30% use of her right

upper extremity during the workday." Dr. Wilkes endorsed the findings of the FCE on May 9, 2016.

In addition, the Appellant presented the testimony of a vocational expert, Mike McCord, who testified that, based upon his review, the Appellant was unable to do her prior work and she "was unable to do any work for which she's qualified that exists in substantial numbers." McCord stated that he did not consider any of the Appellant's other health-related conditions[3] to be disabling and only considered the compensable job-related injury in his assessment.

On cross-examination, McCord testified that it was unlikely for the Appellant, as a person who is right-hand dominant but lacks the use of her right hand, and who is high school educated and computer literate, to find a job in the metropolitan Atlanta area. Also during cross-examination, McCord was asked about whether he considered any advanced computer technologies that might assist the Appellant and make her employable, such as voice recognition software. McCord responded that he had considered some adaptive technologies, but felt voice recognition software was not particularly accurate, that joy sticks or rollerballs would be difficult for the

---

[3] The Appellant testified as to her other physical ailments, which included high blood pressure, nearsightedness, arthritis of the right knee that was treated by a total knee replacement, cervical spine issues, and elbow issues.

Appellant to use with her non-dominant, left hand, and that it would not be "feasible[ ]" for her to request that an employer buy software to allow her to work.

The ALJ found that the Appellant failed to carry her burden of proving that she sustained a catastrophic injury as defined in OCGA § 34-9-200.1 (g) (6) (A). The Appellant appealed to the Appellate Division of the Board, which struck and amended certain findings of fact and conclusions of law by the ALJ, but adopted the ALJ's conclusion that the Appellant had failed to demonstrate a catastrophic injury. The Appellant appealed to the Superior Court of Fulton County, which affirmed the decision of the Appellate Division. This appeal followed. For the reasons set forth infra, we affirm.

> In reviewing an award of workers' compensation benefits, both the superior court and this Court are required to construe the evidence in a light most favorable to the party prevailing before the State Board. It is axiomatic that the findings of the Board, when supported by any evidence, are conclusive and binding, and that neither the superior court nor this Court has any authority to substitute itself as a fact finding body in lieu of the Board. The question of whether the trial court applied the correct legal standard in evaluating the evidence, however, is one of law, which we review de novo.[4]

---

[4] *Autozone, Inc.*, 342 Ga. App. at 752 (punctuation and footnotes omitted).

OCGA § 34-9-200.1 (g) (6) (A) states that one type of catastrophic injury is an injury

> of a nature and severity that prevents the employee from being able to perform his or her prior work and any work available in substantial numbers within the national economy for which such employee is otherwise qualified; provided, however, if the injury has not already been accepted as a catastrophic injury by the employer and the authorized treating physician has released the employee to return to work with restrictions, there shall be a rebuttable presumption, during a period not to exceed 130 weeks from the date of injury, that the injury is not a catastrophic injury. During such period, in determining whether an injury is catastrophic, the board shall give consideration to all relevant factors including, but not limited to, the number of hours for which an employee has been released. A decision granting or denying disability income benefits under Title II or supplemental security income benefits under Title XVI of the Social Security Act shall be admissible in evidence and the board shall give the evidence the consideration and deference due under the circumstances regarding the issue of whether the injury is a catastrophic injury; provided, however, that no presumption shall be created by any decision granting or denying disability income benefits under Title II or supplemental security income benefits under Title XVI of the Social Security Act.

With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

6

1. The Appellant argues that the trial court erred in affirming the decision of the Board because the Board did not rely on competent evidence but instead, improperly relied upon "reasonable inferences" it claimed were drawn from the evidence. Specifically, the Appellant asserts that the Board relied upon its own experiences, not the undisputed evidence presented, in deciding that jobs were available to the Appellant in substantial numbers within the national economy pursuant to OCGA § 34-9-200.1 (g) (6) (A).

The record shows that the ALJ discounted the testimony of the Appellant's vocational expert, McCord, in its decision, stating:

> [he] testified that a person of [the Appellant's] skill cannot find a job, even in a city such as Atlanta, given her restrictions. He also opines that it would not be feasible to obtain a job where an employer would have to accommodate limitations with voice recognition technology that is "not particularly accurate." Also, devices such as joysticks and trackballs would require the use of the non-dominant hand which would prevent [the Appellant] from meeting any kind of production requirements.

The ALJ's decision stated that it found "these opinions unconvincing, as accuracy can be attained with voice recognition software and as [McCord] appears to underestimate the ability of human beings to compensate for their limitations."

7

Secondly, the ALJ found that McCord "[u]ltimately, and importantly . . . conceded that [the Appellant] could return to work if she was able to perform a job without using her right upper extremity." According to the ALJ, "[b]ased on this concession, I assign little weight to [McCord's] opinion that jobs suitable to [the Appellant's] limitations for which she is otherwise qualified are not available in substantial numbers within the national economy."

Following entry of the ALJ's decision, the Appellant appealed to the Board, which struck the portion of the ALJ's decision relying on "[the Appellant's] potential use of adaptive technologies when weighing evidence presented by [the Appellant] of her inability to perform work available in substantial numbers in the national economy." Still, in affirming the ALJ's decision, the Board ruled:

> We conclude that a preponderance of the competent and credible evidence when taken as a whole support's the [ALJ's] ultimate finding that [the Appellant] did not carry her burden of proving that her injury [was] catastrophic. Such evidence includes evidence of the various impairments considered by [the Appellant's] expert witness and the reasonable inferences that may be drawn therefrom regarding whether and to what extent those impairments are attributable to conditions unrelated to the compensable work injury, as well as evidence of decisions denying two applications for Social Security disability income

8

benefits, which applications were based exclusively on impairments associated with this compensable claim and no other health problems.

The trial court affirmed the Board's decision, finding that the Appellant "gross[ly] distort[ed]" the Board's actual ruling and that "the Board's final decision [did not] rest solely on unspecified 'reasonable inferences.'"

> [W]hen a Board's decision is appealed to the superior court, the Board's decision is deemed conclusive and may not be set aside unless the court finds that there was insufficient competent evidence to support the decision, the decision is contrary to law, or another specific statutory basis exists. In making this determination, the court is not authorized to disregard competent evidence that it believes is not credible, reweigh the evidence, or resolve conflicting evidence, as these powers are reserved solely for the ALJ and the Board.[5]

Here, the Board, with some exceptions, adopted the findings of the ALJ and agreed with the ALJ that the Appellant "did not carry her burden of proving that her injury is catastrophic." The Appellant's argument that the ALJ and the Board failed to consider uncontradicted evidence offered by McCord of her inability to "perform any work available in substantial numbers within the national economy for which she is otherwise qualified[,]" is unavailing.

---

[5] *Autozone, Inc.*, 342 Ga. App. at 753 (footnotes omitted).

9

As stated previously, the weight and credibility of witness testimony remains solely within the purview of the ALJ and the Board.[6] Further, the ALJ and the Board were authorized to disregard or reject evidence they found that was not credible.[7] The trial court reiterated this point in stating, "[a]s the Board recognized, the ultimate decision of the [ALJ] was not contingent on speculation about adaptive technologies [or] on its references to unspecified reasonable inferences. The Board unequivocally stated its decision was based on the record and acceptance of the [ALJ's] determinations as to weight and credibility of the evidence."

---

[6] See *Decostar Indus. v. Juarez*, 316 Ga. App. 642, 644 (1) (730 SE2d 120) (2012) ("Determinations of credibility and the weight of testimony are for the ALJ and appellate division, not for the reviewing court. The ALJ is free to believe the testimony of one witness over that of other witnesses.") (punctuation and footnotes omitted); see also *Bonus Stores, Inc. v. Hensley*, 309 Ga. App. 129, 131-132 (1) (710 SE2d 201) (2011) (Although the Board's review is limited to the record received by the ALJ, the Board is "a trier of fact, authorized to assess witness credibility, weigh conflicting evidence, and draw factual conclusions different from those reached by the ALJ who initially heard the dispute.") (citation and punctuation omitted).

[7] See *Fulton County Bd. of Ed. v. Taylor*, 262 Ga. App. 512, 515-516 (2) (586 SE2d 51) (2003) (This Court affirmed the rejection of uncontroverted expert testimony by the Board, holding that "[t]he rejection of [this case's] medical opinions was within the authority of the appellate division, which is not absolutely bound to accept such expert opinions even when uncontroverted.") (punctuation and citations omitted).

In other words, the Board did not alter key findings of fact regarding the credibility of McCord. To the extent that the Appellant argues that the ALJ did not consider the direct evidence presented by McCord, that assertion is without merit because both the ALJ and the Board found that the evidence was not credible.

Also, the Appellant's argument that the Board improperly based its determination solely on its own experience is not supported by the record.[8] The Board specifically stated that the evidence considered in its ruling included "evidence of the various impairments considered by [the Appellant's] expert witness[,] as well as evidence of decisions denying two applications for Social Security disability income benefits, which applications were based exclusively on impairments associated with this compensable claim and no other health problems." Further, as the trial court noted, the Appellant's medical records and reports also supported the finding by the ALJ and the Board that the Appellant did not have a catastrophic injury.[9]

---

[8] See *Reid v. Ga. Bldg. Auth.*, 283 Ga. App. 413, 416 (1) (641 SE2d 642) (2007) (Because the claimant bears the burden of showing that her injury is catastrophic, the Board is not authorized to determine that an injury is "catastrophic based solely on its own experience[,]" and in the absence of any competent evidence to support such finding.) (punctuation omitted).

[9] See *Bonus Stores, Inc.*, 309 Ga. App. at 131-132 (1); *Taylor*, 262 Ga. App. at 515-516 (2).

Therefore, we find that the trial court did not err in determining that the Board's decision did not solely rely on unspecified "reasonable inferences," but was supported by competent evidence.[10]

2. The Appellant argues that the trial court erred in finding that the Board was authorized to consider the Appellant's testimony regarding the denial of her two SSA applications. Specifically, the Appellant contends that the ALJ and the Board were barred by OCGA § 34-9-200.1 (g) (6) (A) from considering the outcomes of the SSA decisions without the introduction of the actual SSA decisions into evidence. We disagree.

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning. Where the language of a statute is plain and susceptible of only one natural and reasonable construction, an appellate court must construe the statute accordingly.[11]

---

[10] See *Aimwell, Inc. v. McLendon Enterprises, Inc.*, 318 Ga. App. 394, 400 (2) (734 SE2d 84) (2012) ("[A] ruling right for any reason will be affirmed.") (punctuation and footnote omitted).

[11] *Bell v. Gilder Timber*, 337 Ga. App. 47, 49 (785 SE2d 682) (2016) (punctuation and citations omitted).

During the hearing before the ALJ, the Appellant testified that she submitted two separate applications to the SSA for disability based on problems with her right wrist and both applications were denied. The Appellant did not tender any documentation that she had received from the SSA into evidence. The Board, in affirming the ALJ's decision against the Appellant, considered, inter alia, "evidence of decisions denying two applications for Social Security disability income benefits[.]"

It is undisputed that during the ALJ hearing, the Appellant testified on cross-examination as to the outcomes of the SSA decisions, without objection by her counsel. Even if we assume, without deciding, that the Board erred in considering evidence of the SSA decisions, the Appellant has not shown that such error probably affected the outcome below.[12]

The SSA decisions were relevant to whether the Appellant was unable to work and the ALJ found the Appellant's testimony to be truthful and credible as to her

---

[12] See OCGA § 24-1-103 (a) (1) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]").

physical limitations.[13] Therefore, the SSA decisions clearly did not affect that ruling. However, the ALJ and the Board based their ultimate decisions on the Appellant's failure to present credible evidence that there were no jobs for her in the national economy.[14] The SSA decisions were not relevant to that issue and, thus, could not have impacted the ALJ's and the Board's ruling on that issue.[15] Consequently, we conclude that the trial court did not err in affirming the decision of the Board.[16]

*Judgment affirmed. Hodges, J., concurs. McFadden, P. J., concurs fully in Division 1 and concurs specially in Division 2.***

**\* DIVISION 2 OF THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).**

---

[13] See *Bonus Stores, Inc.*, 309 Ga. App. at 132 (1).

[14] As explained in Division 1, supra, the ALJ and the Board were within their purview to find that the evidence presented by McCord was not credible.

[15] See *Bonus Stores, Inc.*, 309 Ga. App. at 132 (1).

[16] See *Ray Bell Constr. Co. v. King*, 281 Ga. 853, 854 (642 SE2d 841) (2007) ("It is axiomatic that the findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding.") (punctuation and citations omitted).

14

A18A2015. MCCRARY v. GEORGIA EMPLOYEE
RETIREMENT SYSTEM.

MCFADDEN, Presiding Judge, concurring fully and specially.

I agree with the majority that the judgment below should be affirmed. I concur fully in Division 1 and specially in Division 2.

In Division 2, the majority holds that, if the Appellate Division of the Board of Workers' Compensation did err in considering testimony that the claimant's application for social security benefits had been denied, any such error did not rise to the level of plain error and so did not require reversal of the judgment below. I agree that the error was harmless. But I would hold that the Appellate Division did err.

OCGA § 34-9-200.1 (g) (6) (A) provides, in pertinent part:

*A decision granting or denying disability income benefits* under Title II or supplemental security income benefits under Title XVI of the Social Security Act shall be admissible in evidence and the board shall give the evidence the consideration and deference due under the circumstances regarding the issue of whether the injury is a catastrophic injury[.]

(Emphasis supplied.). As the majority correctly states, we must afford this statutory text its plain and ordinary meaning. See *Bell v. Gilder Timber*, 337 Ga. App. 47, 49 (785 SE2d 682) (2016). The plain and ordinary meaning of this code section is that *a decision* granting or denying disability benefits is admissible and shall be considered by the board.

Under the Social Security Act,

The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this title [42 USCS §§ 401 et seq.]. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.

42 USCS § 405 (b) (1). It is apparent that the Social Security Act contemplates a written decision denying disability benefits. See *Adams v. Harris*, 643 F2d 995, 996-997 (4th Cir. 1981) (discussing the five step process used for disability benefit claims

2

and the various written determinations and notices required at each step). Thus, under the plain language of OCGA § 34-9-200.1 (g) (6) (A), a decision denying disability benefits that is admissible and to be considered by the board is a written decision, not merely testimony that such a decision exists. This is consistent with our own best evidence rule, which provides generally, subject to certain exceptions, that to prove the contents of a writing, the original writing or an authorized duplicate is required. See OCGA §§ 24-10-1001 et seq.

In this case, no such written decision was admitted into evidence. Rather, only brief testimony of the claimant acknowledging the existence of such decisions was offered. Because a written decision as referenced in OCGA § 34-9-200.1 (g) (6) (A) was not admitted, the Appellate Division should not have treated the claimant's testimony as if it were proof of the substance of Social Security decisions that could be considered in determining the issue of whether the claimant had suffered a catastrophic injury. Compare *Cobb County School Dist. v. Barker*, 271 Ga. 35, 40 (3) (518 SE2d 126) (1999) ("In the case at bar, the ALJ had before her the Social Security award and the findings on which the award was based[.]").

Nevertheless, I agree with the majority that in the absence of an evidentiary objection below, any impropriety did not rise to the level of plain error mandating a

3

reversal. See OCGA § 24-1-103 (a) (1). Accordingly, I concur with the majority decision to affirm the judgment below.